BRADHURST AND OTHERS, EXECUTORS, &c. *v.* BRADHURST AND OTHERS.

Where an annuity is given by will to a man and his heirs in perpetuity, he acquires an absolute interest therein, and becomes entitled to the complete disposition of the fund set aside to produce the annuity.

If the annuity be given to a man and the heirs of his body, it is in the nature

of an estate tail; and to prevent a perpetuity, the common law gives him an absolute interest in the annuity.

The rule is the same as to annuities given by a will, whether payable out of real or personal estate.

Where there is a limitation over of an annuity upon the failure of issue, at the death of the annuitant, the limitation over is good, being in the nature of an executory devise.

*Where the testator gave his real and personal estate to executors in trust, to and for the uses mentioned in the will, and then directed them to pay certain annuities to his wife and children during life, and the income of the estate was insufficient to pay all the annuities, it was held, that the executors were authorized to sell such part of the estate as would be necessary to raise a sufficient sum to purchase the annuities given in the will.

1829.

Bradhurst
v.
Bradhurst.

[*332]

THIS was a bill filed by executors against the devisees January 20th. and legatees to settle the construction of the will, and of the various bequests contained therein. In September, 1825, the testator drew his own will, and executed the same in due form of law to pass real estate, and thereby appointed the complainants guardians and executors of his will, and then devised and disposed of his property as follows: "*Imprimis:* I do give and bequeath unto these my aforesaid executors and guardians, in trust to and for the uses and purposes hereinafter mentioned, all my real and personal estate, and order and direct them to pay after the time of my decease unto my beloved wife, Mrs. Mary Bradhurst, the annual sum of $1,200, in half yearly payments; and she my said wife will and may occupy my dwelling house, No. 206 Broadway, so long as it will be agreeable for herself so to do, with her two daughters : otherwise my will is, and I do leave the said dwelling house to the direction and discretion of my said executors and guardians, to sell and dispose of the same. During the time it is kept, the ground rent, taxes, assessments and necessary repairs, are to be paid out of my estates. And I do give unto my said wife all my household furniture and plate, &c., of every description, and all such books as she will wish to retain, excepting my medical books; these I request to be given to the first of my grand-sons who will study physic as a profession.

"Item: I do will and direct my said executors and guardians to pay the annual sum of $1,000, viz., $500 to be paid to each of my said two daughters, to Mrs. Maria T. Scheiffelin and to Mrs. Catharine Ann McKesson $500 annually in half yearly payments: these sums to be paid into the hands of each of them, and to give, at the time of receiving, their own personal and individual receipts for the same. My intention is, that neither of them shall, by any act of theirs, alienate or convey the said annual allowance or their interest to any person or persons, for any time, without forever forfeiting *their claim to any part of my estate or interest therein. The annuity is intended for their use alone, notwithstanding coverture.

"And further, my express will and desire is, and I do direct that at the death or decease of my said wife, their mother, that the full amount of the annuity she, my said wife, did receive for and during the term of her life, be divided into three parts, the one third part thereof to each of my two daughters, and the remaining third part to my grand-daughter, Mary Theresa Scheiffelin, to be paid for and during the term of each of their natural lives; and it will be so understood that this addition or sum being added to the foregoing annuity is to be considered as under the like and the same restrictions as the above annuity or bequest to my said two daughters. These sums, when added together, will make to each of my daughters $900, and to my said grand-daughter $300 annuities. And I do desire and direct that from and after my death and decease, the further sum of $400 per annum will commence and be added to the annuity of my said grand-daughter, Mary Theresa Scheiffelin, making together $700 per annum during her life; and that at the time of her death, if she leaves issue, then the above annuity is to go to her female heirs, in preference to males; but in case if she should die before, or leave no issue, then my will and desire is, that the said annuity go to and among all my grand-daughters, to share equal and alike, viz., of my son and daughters.

"Item: I do order and direct my aforesaid executors and guardians to this my will and testament to allow and give unto each and all of my grand-daughters, both of my son, John M. Bradhurst, and of my daughter, Maria T. Scheiffelin, the annual sum of $200 to each, in half yearly payments, for and during the time or term of their lives; and if it should so happen that either of them should die without leaving issue, then the said annuity, part or portion of her so dying is to be divided amongst the survivors of them then living, or their heirs, female in preference.

*"And it will be so considered and understood, that these annuities are, and will be under the same and the like restrictions as those of their aunts and sister Mary Theresa.

"Item: It is to be understood, and I do order and direct that if at any time hereafter, there should be a deficiency of money in hand to pay the whole at once, the first annuities will have the priority in point of payment, and so in order in point of payment."

[*334]

The testator then made several specific legacies, and afterwards concluded as follows: "Item: After the several annuities in this my will and testament, I do direct that al the remainder of my said real and personal estate, and likewise the above mentioned several annuities as above directed, viz.: to my wife, my two daughters and granddaughters, at the death of either of them, all such sums of money as will come into their possession, I do direct to be for the sole benefit of all and each of my grand-sons living at the time of my death, both of my son and daughters, to share equal and alike to and amongst them as they will arrive at the age of twenty-two years, together with the interest arising from the same by the purchase of stock or bonds and mortgages, and the same to be paid them, or either of them, in whole or part thereof, at the direction and discretion of my said executors and guardians, as they may at the time, or will think proper, as any one of my grandsons manifest and show a disposition and ability to engage or enter on some regular business or employment to ob-

tain a permanent livelihood, and not otherwise on any condition."

The testator died in March, 1826; and by a memorandum enclosed in the envelope with his will, and dated September, 1825, his real and personal property was estimated at $64,900, besides debts; to which was added, "the interest of this amount at 6 per cent:

| | | | |
|---|---|---|---|
| $3,894 | Mrs. B. | $1,200 |
| 2,900 | 2 Drs. | 1,000 |
| ——— | Theresa | 300 |
| $994 | 2 Gr. Drs. | 400 |
| | | $2,900." |

*By another memorandum in the handwriting of the testator, indorsed, "Samuel Bradhurst's will, division of property," and found enclosed in the same envelope, it appeared that the testator had made an estimate upon the basis of an income of 6 per cent. on the value of his property, by which, during the life of his wife, annuities could be paid out of the same as follows: $1,200 to his wife, $500 to each of his two daughters, $300 to his grand-daughter Mary Theresa, $200 each to his two grand-daughters, and $90 to each of his nine grand-sons. That after the death of his wife, by dividing her annuity equally between his two daughters and the grand-daughter Mary Theresa, the legacies to the former would be increased to $900 each, and of the latter to $700. And that on the death of each of his daughters, the annual income of his respective grand-sons would be increased $100, making the annual interest to each grand-son, after the death of both daughters, $290.

The wife elected to continue in the occupation of the house in Broadway. The annual income of the property is but little more than sufficient to pay the annuities to the widow and two daughters; a part of the property being wholly unproductive.

The bill was taken *pro confesso* against the daughters. The widow put in her answer, relinquishing all claim to

dower; but claimed to have the annuity secured to her for life, together with the other provisions made for her by the will.

The grand-daughter Mary Theresa, by her answer, insisted that she was entitled to an annuity of $400, from the death of the testator, with an addition of $400 thereto after the death of her grand-mother; and that she was also entitled to an additional annuity of $200, from the testator's death, under the clause in the will which gives such annuities to the several grand-daughters. She also claimed to have her annuities paid out of the principal of the estate, if the income is not sufficient. The other grand-children being infants, put in their answers by guardian, submitting their rights to the protection of the court. Other questions presented by the pleadings for the decision of the court, were, whether the limitation over of the annuities given to Mary Theresa and *the other two grand-daughters, to their heirs female, was not void, as being too remote; whether the executors are authorized to sell the real estate for the purposes of the will, and what is the true construction of that clause of the will which directs, that if there should not be sufficient money in hand to pay the whole annuities at once, the first shall have the priority in payment.

[*336]

*W. T. McCoun* for the complainants:—The testator intended to give his grand-daughter, Mary Theresa, an annuity of only $300 during the life of her grand-mother; and on the decease of the grand-mother, the further sum of $400 per annum, making in the whole $700. The latter expressions contained in the will show that this is the fair construction of it. Where two parts of a will are irreconcileable with each other, the rule of construction is that the latter shall prevail and overrule the former. (*Sims* v. *Doughty*, 5 Ves. 243; *Constantine* v. *Constantine*, 6 Ves. 100; 4 Mad. R. 82.) Words in a will may be transposed, where the whole context would be thereby rendered more consistent with the facts and the testator's intention.

(*Marshall* v. *Hopkins*, 15 East, 309; *Doe ex dem. Wolfe* v. *Allcock*, 1 Bar. & Ald. 137; 8 Petersdorf's Ab. tit. *Devise*, p. 143, 145, 147.)

Mary Theresa is not entitled by the terms of the will to the further annuity of $200. It cannot be supposed the testator intended to give her so much more than he did the other grand-daughters, or even the daughters themselves.

The income of the estate being insufficient to pay the annuities, the question arises whether the capital of the estate can be resorted to, to make up the deficiency. This cannot be done, unless the will clearly and unequivocally expresses that such was the intention of the testator. The power to resort to the capital of the estate cannot be implied. The first clause of the will devises all the estate, real and personal, to the executors, upon trust for the uses and purposes thereinafter mentioned, but without any words of limitation.

It may perhaps be considered that they take a fee by implication. In *Shaw* v. *Weigh*, (Fitzg. 7; S. C., 2 Strange, 798,) *where there was a devise to three trustees and the survivor and survivors of them, without any words of limitation annexed to their estate, but given to them "upon the trusts hereinafter mentioned," it was held they took a fee, because, otherwise the estate would not be sufficient to answer the trusts; and so all such subsequent trusts would be void. And the court say, "they take a fee simple by implication; for the intent of the testator plainly appears that they should take an estate sufficient to answer and satisfy all the trusts of the will, which must be an estate of inheritance."

But where the purposes of a trust may be satisfied by giving the trustees a less estate than a fee, no greater estate shall arise to them by implication; (*Doe ex. dem. White* v. *Simpson*, 5 East, 162; S. C., 1 Smith's Rep. 383;) the general rule being that trustees take exactly that quantity of interest which the purposes of the trust require. (*Haw-*

[*337]

*ker* v. *Hawker*, 3 Barn. & Ald. 537; *Murthwaite* v. *Barnard*, 2 Brod. & Bing. 623; *Water* v. *Hutchinson*, 5 Moore, 143; S. C., 2 Brod. & Bing. 349, affirmed in 1 Barn. & Cres. 721, and 3 Dow & Ry. 58.)

Under this will the purposes of the trust are to pay to the testator's wife, his two daughters and the grand-daughters, their several annuities, with the remainder of his real and personal estate, to all and each of his grand-sons, living at the time of his death, to be divided amongst them as they arrive at the age of 22; the same to be invested in stock or on bond and mortgage, and to be paid to them in whole or in part, at the discretion of the executors, &c.

If, for these purposes, a fee to the trustees or executors be necessary, then they have it; otherwise not.

But perhaps it is not very important to the present question how or which way this matter is considered. The question is whether the bulk of the estate is to be broken into for the purpose of paying the annuities and the arrears that are due, when the interest and income are not sufficient for the purpose.

The will is not explicit on the subject; it merely directs, if at any time hereafter there should be a deficiency of *money in hand to pay the whole at once, the first annuities will have the priority in point of payment, &c.

[*338]

The court is therefore left to form its own conclusions whether the testator meant that any thing more than the income of his estate should be applied to discharge the annuities, and if not sufficient for the whole, then, whether he intended they should be paid *pro tanto*, or how otherwise.

It is to be observed, that the objects of the testator's bounty (with the exception, perhaps, of his wife) do not stand in absolute need of those yearly sums for their support and maintenance, or for their advancement in life. His two daughters have husbands who are bound to provide for them, and his grand-daughters have parents equally bound, and of ability also to afford them support. It is therefore a case where the court will not feel itself bound from ne-

cessity, (as it sometimes does in the case of infants, where their property is small and their parents poor,) to break in upon the principal in order to afford them a maintenance, as in the case of *Colles* v. *Blackburn*, (9 Ves. 940,) and *Ex parte Green*, (1 Jac. & Walker, 253.) But it is presumed the court will from analogy in principle, adopt the rule established in the following cases:

In *Parker* v. *Parker*, (Freem. 58, the Lord Chancellor would not extend maintenance beyond the interest of the money, because, if he should, it would sink the principal to the detriment of those in remainder.

In *Swinnock* v. *Grisp*, (Freem. 78,) the court would not allow any thing out of the principal towards maintenance, but only the interest.

In *Walker* v. *Wetherell*, 6 Ves. 474,) the M. R. says, the rule has never been to permit trustees, of their own authority, to break in upon the capital. The court very rarely has broken in upon the capital for the mere purpose of maintenance, though frequently for advancement.

In *Beasley* v. *Magrath*, (2 Sch. & Lef. 35,) Lord Redesdale says, maintenance for a child can be charged only out of the interest of its fortune. The like was ruled in *Ex parte McKay*, (1 Ball & B. 405.)

[*339]     *But if the capital of the estate is not to be applied to the payment of the annuities, and there should continue to be a deficiency from the income, then the question remains to be settled, whether the annuities are to be paid *pro tanto*, and all to abate in proportion, or whether the first named are first to be paid.

The general rule as to legacies, in case of a deficiency of assets, is, that all the legacies must abate. (Preston on Legacies, 358.) Priority may however be expressly given. (Id. *Preston* v. *Booth*, 4 Mad. 161, 168, per Vice-Chancellor.)

In this case it clearly appears from the will, that the testator intended, in case of a deficiency, to give his wife and daughters the preference and a priority of payment to the full amount of their annuities.

The memoranda left by the testator show, that the testator did not intend the capital of the estate should be applied to the payment of the annuities. These memorandums are admissible in evidence. Parol or extrinsic evidence has been received to prove the state of a testator's property; to show what he meant to dispose of; to rebut equities grounded on presumption; to support presumptions, and to oust an implication; (*Fonnereau* v. *Poyntz*, 1 Bro. Ch. Cas. 472, 480; *Pole* v. *Lord Somers*, 6 Ves. 309, 327; *Druce* v. *Dennison*, 6 Ves. 385; *Stephenson* v. *Heathcote*, 1 Eden's Rep. 37, 2d ed. and notes; *Colpoys* v. *Colpoys*, 1 Jacob's R. 451.) In this case the memorandums are admissible to show the amount of the testator's property; the supposed income from it; and that he meant to dispose of the income merely in annuities; and the manner in which he intended it to be distributed. The limitation over of the annuities given to Mary Theresa Scheiffelin, (now Mrs. Clark,) "if she leaves issue, to her female heirs in preference to males," and of the annuities to the other grand-daughters, "to their heirs female in preference," are void, the contingency upon which they were to take effect being too remote. The limitation of the annuities to the survivor or survivors of the annuitants are undoubtedly good; (*Robinson* v. *Fitzherbert*, 2 Bro. Ch. Cas. 127; *Jeffery* v. *Sprigge*, 1 Cox, 62; *Kirkpatrick* v. *Kirkpatrick*, 13 Ves. 483; *Massey* v. *Hudson*, 2 Meriv. 130; *Ross* v. *\*Ross*, 1 Jac. & Walker, 154; *Salkeld* v. *Vernon*, 1 Eden's R. 64; *Gray* v. *Shawne*, 1 Eden's R. 153; *Taylor* v. *Clarke*, 2 Eden's R. 202; *Destouches* v. *Walker*, 2 Eden's R. 260; *Badens* v. *Lord Galway*, 2 Eden's R. 297.) It cannot be denied that an annuity may be granted in fee, and descendible to heirs according to the usual course of descents; (*Earl of Stafford* v. *Buckley*, 2 Ves. sen. 170; *Turner* v. *Turner*, 1 Bro. C. C. 315; *Smith* v. *Pybus*, 9 Ves. 566; Pollexfen's R. from page 24 to p. 44.)

*J. I. Rosevelt*, for the adult defendants :—The memoran-

1829.

Bradhurst
v.
Bradhurst.

[*340]

1829.

Bradhurst
v.
Bradhurst.

dums cannot be admitted to explain the will. It does not appear when they were written; if before the will was made, then they are merged in the will: if at the same time, then, to have any effect, they should have been referred to in the will, or on their face should have been so certain as to constitute a testamentary disposition of themselves; and, in that case, to render them available, they should have been proved before the surrogate. Another objection to these memorandums is, that the annuities are a charge as well upon the real as the personal estate; and any testamentary disposition therefore in relation to them, to be valid, must have been executed in the presence of at least three witnesses. If the memorandums were written after the will, by way of an explanatory codicil, they are equally void for uncertainty and for want of execution. The testator clearly intended to give Mary Theresa, now Mrs. Clark, an annuity in the whole of $800; notwithstanding he calls it himself $700. The testator gives her two distinct annuities; the one a third of $1,200, and the other $400. The principle is, that the elements of a calculation must control the result of a calculation; or, in other words, that which is more certain must control what is less certain. Mrs. Clark is also entitled under the will; in addition to the annuities already mentioned, to an annuity of $200. The priority spoken of in the will, in the payment of the annuities in case of a deficiency of money on hand, applies only to the case of a temporary inconvenience as to the time of payment, and not to the payment itself; and if a permanent abatement becomes necessary, it must, according to the general rule, be made *pro rata*.

[*341]

*The particular legatees are entitled, as between them and the residuary legatees, to have their annuities paid out of the capital of the estate, the income of the same being insufficient for that purpose. These annuitants were the special objects of the testator's bounty, and it is only after the several annuities that he directs all the remainder of the estate to be for the benefit of his grandsons; and this re-

mainder, moreover, he describes as something to be paid to them, thereby showing clearly that it was his intention that his whole estate should be converted into cash. It was with this view, no doubt, that the testator devised his whole estate to his executors in trust. As to the supposition that they only take a life interest, it is susceptible of several answers. First, the certain fulfilment of the trust requires a greater estate, inasmuch as the annuitants, for whose lives at least provision is made, may outlive the executors; and what is still more decisive, part of the annuities are in fee. Hence it would follow that the executors would take a fee by necessary implication. Secondly, although no words of inheritance are used in the devise, it is perfectly well settled that the words "all my estate," which are used, have the same operation. (*Livingston* v. *Delancey*, 13 John. 537; *Jackson* v. *Merrill*, 6 John. 185.)

The next question is, what is the nature of the annuities to Mrs. Clark and the other two grand-daughters? Are they for life with remainder over in tail? or are they estates tail, converted by operation of law into estates in fee simple? or are they fees conditional at common law, converted by the birth of issue into fees absolute? As to the two first annuities given to Mrs. Clark, they are by the will delared to be "during her life, and at the time of her death, if she leaves issue, then to go to her female heirs in preference to males; but in case she should die before, or leave no issue, then to go to and among all the testator's grand-daughters." From this language, it is apparent that the testator intended the provision in question to be continued to Mrs. Clark and her descendants so long as she should have any. From which position two consequences follow: First, that the limitation *over of the grand-daughters being dependent on an indefinite failure of issue, is void for remoteness; and secondly, that the estate granted to Mrs. Clark is either an estate for life with remainder to her issue in fee, or which is more consonant with the spirit of the anthorities, an estate tail in Mrs. Clark by implication,

1829.

Bradhurst
v.
Bradhurst.

[*342]

1829.

Bradhurst
v.
Bradhurst.

converted either by the operation of our statute, or by the birth of issue at common law, into a fee simple absolute. (*Earl of Stafford*, v. *Buckley*, 2 Ves. sen. 170 ; Co. Lit. 144, b.) An annuity, like the rent of land, may be granted in fee as well as for life or years ; and whether it be within the statute *de donis*, and therefore subject to the doctrine of entails, or within the principle of fees conditional at common law, as adjudged in Nevil's case, the result in the present instance will be precisely the same. (7 Co. 33.) " It is admitted," says the Master of the Rolls, in the case of *Smith* v. *Pybus*, 9 Ves, 574,) cited by the counsel for the complainants, " that an annuity to a man and his heirs would constitute a perpetual annuity ; and the only way of satisfying it is by setting aside such a sum as would forever answer it ; and the annuitant would have the absolute disposition of the sum so set aside." The annuities of two hundred dollars, each given to the grand-daughters as such, are declared to be " for and during the term or terms of their lives ; and if it should so happen that either of them should die without leaving issue, then that the said annuity, part or portion of her so dying, is to be divided amongst the survivors of them then living, or other heirs, female in preference," with a limitation over in favor of the residuary legatees. The cross-remainders in this case, as well as the limitation over, being equally dependent on an indefinite failure of heirs, are clearly void as too remote ; and, upon the principle of the great Eden case, each of the grand-daughters takes an estate tail turned by law into a fee simple. (*Wilkes* v. *Lyon*, 2 Cowen, 333; *King* v. *Melling*, 1 Vent. 225 ; 2 Lev. 58 ; 1 Bulst. 219 ; Wild's case, 6 Co. 17 ; Shelby's case, 1 Co. 99 ; *Richards* v. *Lady Bergavenny*, M. 1695 ; 2 Vern. 325 ; *White* v. *Collins*, Com. R. 289 ; *Sparrow* v. *Shaw*, 3 Bro. P. C. 467 ; *Jackson ex dem. Herkimer* v. *Bellinger*, 18 John. 368.) Personal estate cannot be entailed. *Where personal estate is bequeathed in a will by words which in case of real estate would have created an estate tail, the absolute property passes to the lega-

[*343]

tee. (*Seale* v. *Seale*, 1 P. Wms. 290; Prec. in Chanc. 421;
Gil. Eq. R. 105; *Butterfield* v. *Butterfield*, 1 Ves. 133, 154;
*Stratton* v. *Payne*, 3 Bro. P. C. 257; *Earl of Chatham* v.
*Tothill*, 6 Bro. P. C. 450; *Pelham* v. *Gregory*, 5 Bro. P. C.
435; *Duke of Montague* v. *Lord Beaulieau*, 6 Bro. P. C. 225.)

*W. Van Hook*, for Bradhurst's infants.

*B. Ferris*, for Scheiffelin's infants.

THE CHANCELLOR:—I am satisfied from the will itself,
without reference to the memorandums found therewith,
that the intention of the testator was, to give to his grand-
daughter Mary Theresa an annuity of $300 only, during
the life of her grand-mother; and on her decease to add to
it one-third of the legacy given to the latter, thereby in-
creasing it to $700.

The proper rule of construction in the case of wills, is to
give effect to the intention of the testator, if such intention
can be discovered from the whole will taken together, and
the same is not inconsistent with the rules of law. (*Wyatt*
v. *Sadler's heirs*, 1 Munf. 537.) And where such intent is
plainly discoverable, the court, in order to give effect there-
to, frequently rejects the strict grammatical sense of the lan-
guage employed by the testator.

The first annuity of $300 to Mary Theresa, was undoubt-
edly the one intended to commence from his death. And
in the subsequent clause, in which he directs, "that from
and after my death and decease, the further sum of $400 per
annum will commence and be added thereto," the testator
has evidently substituted his own death for that of his
wife; for he had before declared, that after the death of his
wife, the $1,200 should be equally divided between Mary
Theresa and her two aunts. And this is undoubtedly the
same $400 which he directs to be "added to her annuity;"
for he then goes on further and says, "making together
$700 per annum, during her life." If he had intended the

$400 as the annuity *to commence at his death, he would not have directed it, at that time, to be added to the annuity which was to commence afterwards. He could not have intended to give two $400 legacies, one commencing at his own death, and the other on the death of his wife, because one of them is mentioned as $300 only. And both, when added together, are by him declared to amount to $700. By the grammatical construction of the language used by the testator, the $300 annuity is not described as the third part of the annuity of the grand-mother, which he directs to be divided on her death. This part of the will is certainly very obscure, but I think sufficient appears to show the testator's intent without looking beyond it. If it will not bear this construction, and the written memorandums of the testator cannot be resorted to for the purpose of explaining his intention, the court might be compelled to reject the whole of the annuities to Mary Theresa, as being void for uncertainty.

There is no ground for the claim put in by Mary Theresa for an additional legacy of $200, from the death of the testator, under that clause of the will which gives such legacies to each and all of his grand-daughters. Although the general description of the legatees would include her also, yet it is evident he did not intend her as one of them ; because in the next clause he directs that those legatees should take their annuities, subject to the same restrictions as those which were imposed in relation to the legacies given to "their aunts and sister Mary Theresa."

The next question is as to the limitations over of the annuities to Mary Theresa and the grand-daughters, which must be understood to mean those in existence at the death of the testator. And here it may be proper to observe that this will is so obscurely and inartificially drawn, that it is impossible to ascertain, with any degree of certainty, what was the real intention of the testator. The several bequests must therefore be construed according to the legal effect of the terms employed. It appears to have been the

general object of the testator to make personal property un-alienable. That not being allowable, the construction of some parts of the will must, of course, be contrary to his intention. Annuities *given by will, although payable out of the personal estate, or out of the general funds of the testator, are generally construed and governed by the principles which are applicable to a devise of real estate. Thus, if an annuity is given to a man and his heirs in perpetuity, he has an absolute interest therein; and the only way of satisfying it is by setting aside such sum as will forever answer it; and the annuitant is entitled to the absolute disposition of the fund so set aside. (*Smith* v. *Pybus*, 9 Ves. 567. (If it is given to a man and the heirs of his body, it is in the nature of estate tail; but the annuity cannot be barred by a common recovery as a real estate can. (Doct. & Stud. Dial. 1, ch. 30; and per Lord Loughborough, 1 Brown's Ch. Rep. 319.) Therefore, to prevent a perpetuity, the common law gives to the annuitant an absolute interest; and the effect is precisely the same as that produced by our statute abolishing entails upon a devise of real property in tail. Upon the same principles, a limitation over of the annuity upon an indefinite failure of issue is void, as depending upon too remote a contingency. (*Seale* v. *Seale*, Prec. in Ch. 421; 1 P. Wms. 290, S. C.; *Bodens* v. *Watson*, Amb. 398, 478; *Robinson* v. *Fitzherbert*, 2 Bro. Ch. Rep. 127.) But if the failure of issue is confined to the death of the annuitant, the limitation over is good, as being in the nature of an executory devise. (*Shepherd* v. *Lessingham*, Amb. 122; 13 Ves. 484; 6 Bro. P. C. 318.)

The limitation over of the annuity to Mary Theresa is not upon an indefinite failure of issue, but upon the contingency of her dying without issue living at the time of her death. Therefore, upon the principle of the case of *Wilkes* v. *Lyon*, (2 Cowen, 333,) she is entitled to the same in perpetuity; subject, however, to the contingency of her dying before the other grand-daughters, and without issue living at the time of her death. And she is not entitled to the

[*346]

absolute control of the fund set apart for the purpose of raising that annuity, until it is ascertained that the limitation over cannot take place. The $200 annuities to the other grand-daughters are also in perpetuity, but the whole goes to the survivor, if either dies in the life time of the other without *issue living at the time of her death. The true construction of the will is, that the executors take the whole estate, with power to sell the same for the purpose of the will; subject, however, to his restriction, that the widow is entitled to the possession of the dwelling house in Broadway during her natural life, or so long as she thinks proper to reside there. The specific legacies must first be satisfied, and a sufficient sum appropriated to pay the ground rent, taxes, assessments and necessary repairs of the house and lot in Broadway. If there is not sufficient property to raise and pay all the annuities, the clause of priority in the will requires the $1,200 annuity to the widow, with its several remainders over, to be first provided for; then the two $500 annuities to the daughters, and after that the $300 annuity to Mary Theresa. The $200 legacies to the other grand-daughters must be postponed to all these; and if there is any abatement, it must be in the several classes only. A sufficient sum must therefore be appropriated to purchase an annuity of $400 during the joint lives of the widow and Mrs. Scheiffelin, and a like annuity during the joint lives of the widow and of Mrs. McKesson; and another annuity of $400 in perpetuity. The whole of these annuities must be paid to the widow for life; and after her decease, the first annuity must be paid to Mrs. Scheiffelin, the second to Mrs. McKesson, and the third to Mary Theresa, during their respective lives; and after the death of Mary Theresa, if she shall survive the other grand-daughters and leave issue, the latter annuity, or the fund set apart for the payment thereof, must be transferred to her legal representatives; but if she dies before the other grand-daughters, or either of them, and without issue, then it is to go to those grand-daughters, or such of them as are then living,

in perpetuity. After providing for those annuities, another sum must then be appropriated to purchase two annuities of $500 each, one for the life of Mrs. Scheiffelin, and the other for the life of her sister, and to be paid to them respectively according to the directions of the will. A further sum must then be set apart to purchase an annuity of $300 in perpetuity, to be paid to Mary Theresa for life, including arrears from the death of the testator, and to be disposed of after her *death in the same manner that the $400 annuity in perpetuity is herein directed to be disposed of; and out of the residue of the estate a further sum must then be appropriated, sufficient to purchase two perpetual annuities of $200 each, for the other grand-daughters of the testator, to be paid to them respectively, or to accumulate for their benefit from the death of the testator during their natural lives. And if either of them die during the lifetime of the other without leaving issue then living, the whole to go to the survivor in perpetuity; but if either dies without issue during the life of the other, their respective annuities, on the death of each, are to go to their legal representatives in perpetuity. After providing for these several annuities, the residue of the property must be appropriated for the use of the grand-sons who were in existence at the death of the testator, or their legal representatives, in the manner mentioned in the will.

[*347]

A decree must therefore be entered, declaring the construction of the will as above stated, and directing the executors to appropriate the real and personal property of the testator to raise and pay the annuities and legacies according to this construction. They are also to have their costs of this suit out of the estate.