## WATSON AND WIFE v. MAY.

1. The statute which gives a writ of error or appeal from all judgments, or final orders of the Orphans' Court, does not take in cases in which neither writ of error or appeal could be taken, by the course of practice in the Courts of the civil or common law.
2. It is not necessary to the validity of proceedings by administrators before the Orphans' Court, that parties should there be made except in cases provided by the statute. Even where the estate is ready for distribution, a general citation to parties having an adverse interest was necessary, prior to the last act.
3. Persons having an adverse interest, are not concluded by an erroneous decree, but they cannot, without further proceedings, forthwith sue out a writ of error.
4. The personal representative is entitled to examine and litigate the title of any one who claims an interest in the final distribution of the estate.
5. When the proceedings by an executor or administrator have been in conformity to the rules prescribed for his action, there can be no review of the facts upon which the judgment of the Court is founded, although persons having an adverse interest were not apprised of the final settlement intended by the administrator. On the other hand, the administrator cannot prevent a re-examination, when the proceedings are erroneous, because those actually interested have not appeared.
6. When any one claims to have the right to examine the correctness of a final decree, the proper practice is for him to propound his interest to the Court in which the decree is rendered. Upon this, after citation to the administrator, and his appearance or default, the person is made a party or his petition is dismissed.
7. When a writ of error is sued out by persons who are not parties to the proceedings below, the writ of error will be dismissed.

Writ of Error to the County Court of Sumter.

THE writ of error in this case is sued out by Watson and his wife, who is the Emily Easley hereafter named, and a motion is submitted to amend the writ of error in the parties plaintiff, so as to conform to the transcript sent to this Court. The motion is resisted, and a cross one made to dismiss.

23

The record discloses these facts:

At a special term of the County Court of Sumter, held on the 3d June, 1839, probate of the will of Wareham Easly was granted, and letters testamentary issued to David Blackshear and Thomas Ballzell, who are named by it as executors. By this will, specific bequests are made to Creed T. Easley and Martha Ann Foreman, two of the testator's children. Another bequest of a right of action is made to Martha Ann Foreman, before mentioned, and Samuel W. and Christopher Easley, two children of his sons, and the remainder of his estate, real and personal, is given to his wife, Emily Easley, and to her children, until his daughters, Catharine Maria, Elizabeth Jane and Virginia Noble, should become of age, when the whole estate was to be equally divided between them, his said children. His executors are also invested with power to sell certain lands described in the will. Both the executors resigned the trust, on the 17th June, 1839, and on the 8th July, Patrick May, the defendant in error, was appointed administrator *de bonis non cum testamento*, &c. In August of that year, the administrator filed a petition praying an order for the sale of certain lands therein described, and other than those named in the will. In this petition he sets out, that Emily Easly, the widow, Catharine M., Elizabeth J. and Maria N., the children of the testator, are the only persons interested, they being the devisees, &c. A guardian *ad litem* was appointed, who denied the allegation, and a decree was made the same day that the petition was filed for the sale of the lands. Commissioners were appointed to conduct the sale, and their report of sale was confirmed at the October term of the same year. After a return of inventory, account sales and several accounts showing the hiring of slaves, the administrator, on the 27th October, 1842, applied for leave to make a final settlement, and thereupon the 3d of January, 1843, was set for that purpose. On that day, as appears from the recitals of the record, the administrator appeared and presented his accounts for settlement; a settlement was made, in which he appeared as having expended more than he had received, $1,650. This sum, by the decree, was to be retained by him out of uncollected assets; or out of assets which should afterwards come to his hands; or for which an execution might issue, at his option, to be levied of the goods and chattels of the estate, as soon as administered by some other person, It

does not appear that any one appeared at the settlement of the estate to contest the proceedings, and the administrator immediately afterwards resigned his trust.

R. W. SMITH, for the motion.

F. S. LYON, contra.

GOLDTHWAITE, J.—1. In testamentary matters, the Orphans', or, more properly to speak, the County Court, is invested with jurisdiction of a peculiar nature, entirely different in many essential particulars from that of a court of common law; and in the exercise of this jurisdiction from its inception, upon the application of any one for the grant of administration, to its close, by rendering judgment upon the final settlement of the accounts of the executor or administrator, questions may arise which require the intervention of parties who would not be parties under other circumstances. Thus when a will is presented for probate the heirs at law are proper parties to contest the will, and yet, after its probate, it might be that they could have no interest whatever in the subsequent proceedings, or in the final settlement. So also where two wills exist, the legatees or devisees under one of them, have the right to contest the other, as well as the heirs at law to contest both. Again, the real estate being charged by statute, generally, with the payment of debts on the deficiency of personal assets, and the personal representative having the capacity to ask for an order of sale of lands, the heirs generally, or the particular devisee, may be entitled to contest the facts, upon the existence of which this power may be called forth. In all these cases, and our statutes present many similar, it is evident, unless the parties interested can re-examine proceedings alledged to be erroneous, their rights may be greatly prejudiced. It was with reference to such matters as these, our statute was enacted, which provides, that from any judgment, or *order final*, whether in vacation or term time, an appeal or writ of error will lie to the Circuit or Supreme Court, in the same manner as upon judgments in the Circuit Courts. [Clay's Dig. 297, § 4.] When, however, an appeal or writ of error is spoken of, the statute must be understood as using these terms in their known and received signification, and ought not to be extended to take in cases in

which neither could be taken, according to any course of practice known either to the civil or common law.

2. Among the duties imposed by law, upon the Judges of the County Courts, are some which may be exercised although the proceedings may not necessarily assume the form of a suit, by the appearance of contesting or litigant parties. Thus administration upon the estates of decedents, when there is no application for the grant, may be imposed on the sheriff, and it is not essential to the validity of any proceedings by an administrator, save only in cases specially provided by the statute, that parties should actually be made. Even when the estate is ready for a final settlement, and consequently for distribution, only a general citation to all persons concerned in adverse interest, to appear was necessary prior to the last act; and this may be given by advertisement, or by other mode of publication. [Clay's Dig. 229, § 41.]

3. But it does not follow, either that persons having an adverse interest, are concluded by an erroneous decree, or that they can, without other proceedings, forthwith sue out a writ of error to review the decree or judgment.

We say it does not follow that persons having an adverse interest to the personal representative are bound by an erroneous decree. This will be apparent, when it is considered, that such may exist and be in entire ignorance of their rights. To hold such to be concluded, without express legislation to that effect, would scarcely comport with sound views of justice.

4. On the other hand it is alike apparent, if any one, by asserting an interest in the final distribution, can attack the decree by suing out a writ of error, without further proceedings in the primary Court, the personal representative would have no opportunity to litigate or examine the title by which they pretended to interfere in the suit. That the personal representative is so entitled, was settled in this Court by the decree of McRae v. Pegues, 4 Ala. Rep. 158. See also, Public Adm'r v. Watts & Leroy, 1 Paige, 347 ; Kellet v. Rathbun, 4 ib. 162.

5. In Courts, proceeding according to the course of the civil law, no difficulty ever arises upon the questions of making new parties to causes in progress. The Courts being always open, the person claiming an interest in the cause, or the subject matter of the suit may always intervene, which is done by a petition

or libel, in which he sets out his interest, or the title by which he claims to come before the Court. If this title is denied or disputed, an exceptive allegation is filed by the other parties, and, if necessary, the interest is ascertained. [Public Adm'r v. Watts & Leroy, 1 Paige, 347; 2 Brown's Civ. & Adm. Law, 402; Reid v. Owen, 9 Porter, 181.] A similar rule obtains after a final judgment has been rendered in admiralty suits, and the cause may not only be examined as to the law, but the facts also, if the proceedings have been by default. [2 Bro. Civ. & Adm. Law, 402.]

Under our statutes, however, it is evident enough, that the Legislature never contemplated, or intended, a review of the facts when the proceedings by an executor or administrator have been in conformity with the rules prescribed for his action, although it might happen that persons adverse to him in interest were, in point of fact, never apprised of it, or of his intention to proceed to a final settlement. On the other hand, it seems to be alike evident, that he cannot prevent a re-examination when the proceedings are erroneous, because those interested in contesting the matter have not appeared.

6. The course of practice, which seems the only one by which the rights of all can be properly guarded, when there has been no contested suit, is to permit all, or any of those who claim to have the right to examine the correctness of the final decree, to propound their interest to the Court in which the decree was rendered, upon which a citation to the personal representative would be proper, requiring him to appear at a stated term, or in vacation, and contest their claim. If, after service, he remained in default, the order would be, that parties should be made for the purposes of the writ of error, or appeal, and the same order would be proper, if the claim was supported against an exceptive allegation of the other party. If, however, the exceptive allegation was found to be true, the petition would be dismissed. This is, in effect, the course of practice in the Eclesiastical and Admiralty Courts, somewhat modified to meet the exigencies called for by our statutes.

7. To apply what we have now ascertained to the case before us, it is necessary to recur to the facts contained in the record. Do the plaintiffs in error wish to question the correctness of the proceedings for the sale of the real estate? or, is it the final

settlement made by the administrator *de bonis non* with the Court? And if the latter, how are we at this time to know, that the administrator may not have fully paid and discharged to them all that they claim? If the order of sale is the subject to be examined, that is already barred by lapse of time. [Boyctt v. Kerr, June Term, 1844.] And if it is matter pertaining to the final settlement, the administrator is entitled to question the plaintiff's right to call him to account, or to examine errors, which, after all, may not affect them. If they have an interest to correct any errors in the final settlement, they can place themselves in a condition to examine them on error by pursuing the course we have indicated.

There is nothing in the transcript either to warrant the writ of error as it now is, nor can it be made available by amendment. It must therefore be dismissed.