## PINCKNEY vs. PINCKNEY.

*In the matter of the Estate of* PETER PINCKNEY, *deceased.*

THE testator bequeathed leasehold estate unto his sons B. and W., "and their heirs," "the income arising therefrom to be divided between them equally, share and share alike, and in case either should die leaving no issue, the one surviving to have the share of the one so dying."—Held that the contingent limitation of survivorship was valid, and that the legatees took a vested interest as tenants in common in the premises, subject on the decease of either without issue, to a limitation over to the survivor.

A devise to M. and E., with a direction that the income "be equally divided between them until the youngest arrive at lawful age, when the same may be sold, and the proceeds divided equally between them; and in case of the death of either leaving no heirs, the one surviving to have the share of the one so dying."—Held that the word *heirs* was used in the sense of issue, and that the right of survivorship must be referred to the contingency of death without issue, previous to the period appointed for division and distribution.

A gift to the testator's wife of the use and income of certain real and personal estate, and the interest of a specified sum to be invested, does not throw upon the general estate the taxes, expenses, and commissions, but they are chargeable upon the particular devise and bequest.

A legacy declared by the testator to "be in lieu of all rights" the legatee may have in his real or personal estate, does not debar the legatee from a share, as next of kin, of an undisposed of residue, as to which the testator died intestate. The same rule applies to the interest of the widow in such a residue, although bequests are made to her by the will, "in lieu of all interest whatever" in the testator's personal estate.

A. THOMPSON, *for the Executors.*

THE SURROGATE. Upon the final accounting of the executors, several important questions are presented for consideration, involving the construction of various articles of the will.

1. The second item of the will is in these words: " I will and bequeath unto my sons, Benjamin and Walter, and their heirs, the house and premises belonging to me,

situate.number 39 Third Avenue, in the city of New-York, the income arising therefrom to be divided between them equally, share and share alike, and in case either should die leaving no issue, the one surviving to have the share of the one so dying."

The premises here bequeathed consist of leasehold estate, and the question submitted for decision, relates to the effect of the clause of survivorship.

The direct gift in the first instance is to the two sons, and their heirs, which creates, if we stop there, a vested legacy. The subsequent direction as to a division of the income, though it would indicate the legatees were to take as tenants in common, would not be sufficient to cut down or qualify the estate previously given. On the contrary, a gift of income without restriction as to continuance, and without limitation over of the principal, often effects a gift of the principal or *corpus*. (2 *Roper*, 1476.) "*Prima facie*," says Sir William Grant, "a gift of the produce of a fund, is the gift of that produce in perpetuity, and is consequently a gift of the fund itself" (*Adamson* vs. *Armitage*, 19 *Vesey*, 416); and he accordingly held that a bequest in the first part of a codicil of the entire fund, was not reduced to a life-interest by subsequent words directing the payment of the income to the legatee. (See *Butterfield* vs. *Butterfield*, 1 *Vesey*, sen., 154.)

The first portion of this clause of the will, then, vests the property in the two legatees, subject only to the limitation in favor of the survivor, in case either of them should die leaving no issue. The term "dying without issue," which had acquired at Common Law a fixed technical sense, as expressing an indefinite failure of issue, so that a limitation of personalty upon such a contingency was void for remoteness, and left the gift to the first taker absolute, was in the case of wills always held in subservience to the intention of the testator, and effect was studiously given to such expressions as indicated an intent to confine the failure of issue to the time of the parent's death. The word

"survivor" was one of these expressions, and the limitation in the present case being to the survivor of the persons named, would not at Common Law have been too remote. (*Anderson* vs. *Jackson*, 16 *J. R.*, 382; *Patterson* vs. *Ellis's Executors*, 11 *Wend.*, 259; 2 *Cowen*, 333; 20 *J. R.*, 483; *Cutter* vs. *Doughty*, 23 *Wend.*, 513.) The Revised Statutes have, however, set this question at rest, by declaring that when a remainder shall be limited to take effect on the death of any person without issue, it shall be construed to mean without issue "living at the death of the person named as ancestor." (2 *R. S.*, 3*d* ed., *p.* 10, § 22.)

But it may be inquired, whether such a limitation is not void, as repugnant to the interest previously vested in the legatees. A similar point was raised in *Patterson* vs. *Ellis's Executors*, 11 *Wend.*, 275, but it was not insisted that where the clear intention was to give the use only to the first taker, any thing more than the use attached. (*Ibid.*, 298.) The early doctrine in respect to chattels real or other personalty, appears to have been that a bequest for life amounted to an absolute gift, so as to invalidate any subsequent disposition after the life-tenant's death. (2 *Roper*, 1519; 2 *Kent's Com.*, 352.) After gradual inroads upon this rule, it finally became well settled that a remainder over after a gift for life of a chattel, was good as an executory devise. (1 *P. Wms.*, 1, 500, 748; 2 *Vern.*, 59; 3 *Vesey*, 205; 5 *John. Ch. R.*, 334.) Where, however, the intent is to give an absolute unconditional gift and power of disposition to the primary legatee, and the legacy over is of what remains *unspent*, or of that which he dies possessed of, or has not sold or devised, such a remainder is void, as being inconsistent with the absolute estate or *jus disponendi* previously given by express terms, or necessary implication. (*Att'y Gen'l* vs. *Hall*, *Fitzgibb.*, 314, 321; *Flanders* vs. *Clark*, 1 *Vesey*, sen., 9; *Bradley* vs. *Peixotto*, 3 *Vesey*, 324; *Ross* vs. *Ross*, 1 *Jac. & W.*, 154; *Jackson* vs. *Bull*, 10 *Johns. R.*, 19; 4 *Kent. Com.*, 270; *Ide* vs.

*Ide*, 5 *Mass. R.*, 500 ; *McLean* vs. *Macdonald*, 2 *Barb. S. C.*, 534 ; *Dorland* vs. *Dorland*, 2 *Ibid.*, 81.)   The sum of all the cases is this : that where the true import of the gift is to vest the legatee with the power of disposing of the principal fund, the thing itself, so that in the lawful exercise of that power the estate may be consumed by the first legatee, and nothing be left at his decease, and where only the residue undisposed of is given over, then the legacy over is void for repugnance to the absolute ownership previously given.   But where the thing itself, the entire interest, is limited over on a contingency, the generality of the words of the first gift, which standing alone and uncontrolled, would have given the absolute estate, will be restrained and qualified.   There is no inconsistency in such a limitation, for reading the whole provision together, an unqualified ownership is not given to the first taker, but only a limited or conditional interest, the principal being tied up and made subject to an executory bequest to another person on the happening of a certain contingency. (*Moffat* vs. *Strong*, 10 *John. R.*, 12.)   The effect of such a restriction is to render the first taker incapable of defeating the limitation by any act of his own.   (2 *Vernon*, 131 ; *The Duke of Norfolk's Case*, 3 *Ch. Cas.*, 28 ; *Fletcher's Case. Eq. Ca. Ab.*, 193 ; *Minter* vs. *Wraith*, 13 *Simon*, 52 ; *Gawler* vs. *Cadby*, 1 *Jacob.*, 346 ; *Stokes* vs. *Heron*, 12 *Cl. & Fin.*, 186 ; *Bradhurst* vs. *Bradhurst*, 1 *Paige*, 331 ; *Covenhoven* vs. *Shuler*, 2 *Paige*, 131, 9 *Jurist*, 493.)   The Revised Statutes have put an end to all semblance of distinction as to limitations of real and personal estate, by declaring that limitations of future or contingent interests in personal property shall be subject to the same rules as are prescribed in respect to land.   (2 *R. S.*, 3*d* ed., *p.* 58, §§ 1, 2 ; *Hannan* vs. *Osborne*, 4 *Paige*, 336 ; *Gott* vs. *Cook*, 7 *Paige*, 521 ; *Ibid.*, 222 ; 9 *Paige*, 265 ; 24 *Wend.*, 641 ; 26 *Wend.*, 229 ; *Lawrence* vs. *Bayard*, 7 *Paige*, 76 ; *Emmons* vs. *Cairns*, 3 *Bar. S. C.*, 245.)   In England, under a bequest of personalty by will executed subsequent to the

1 *Vict.*, *c.* 26, which contains similar provisions to those of our statute, where there was a legacy to A and B, to be divided equally, with a request to A, that "should he die without lawful issue, the property shall revert back to the sons of B," it has been held that A did not take the absolute interest in the moiety. (*In re Thomas O'Bierne*, 1 *Jones & Lat.*, 352, 9 *Jurist.*, *dig.*, 213, see 9 *Jurist.*, 493.)

There is often much difficulty in determining the period to which words of survivorship are to be referred. Ordinarily a general provision in favor of survivors relates to the testator's death, or the time pointed out for distribution, such as the death of a previous life-tenant. (2 *Jarman*, 634, 641; *Shergold* vs. *Boone*, 13 *Vesey*, 370; *Buckle* vs. *Fawcett*, 4 *Hare*, 536.) But where the survivorship is dependent upon a double contingency, such as death, and without leaving children, in the absence of any thing to restrain and fix the time, there is nothing to prevent the words having full scope, and the survivorship is indefinite, taking effect whenever the contingency happens. (*Allen* vs. *Farthing*, 2 *Mad.*, 310, and cited in 2 *Jarman*, 688; *Child* vs. *Giblett*, 3 *Myl. & Keen.*, 71; *Gawler* vs. *Cadby*, *Jacob*, 346; *Lovett* vs. *Buloid*, 3 *Bar. Ch. R.*, 147.) The point is often of great difficulty in solution, and in the present state of the authorities, it is hazardous to lay down any general rule. The clause of the will now under consideration does not, I think, present any embarrassment, no time being expressly fixed for the division of the property, and the direction to divide the income, though insufficient to cut down the interest of the legatees to a life-estate, still favoring the idea that the testator intended to subject the absolute right of ownership to the contingency of death without issue, whenever it might occur.

I am, therefore, of opinion, that under this bequest the testator's sons, Benjamin and Walter, took an estate or interest as tenants in common in the leasehold premises, subject on the decease of either without issue, to a limitation over to the survivor. This contingent interest over is dis-

35

posable, and I suppose both the legatees could unite and discharge it by mutual release, or joint conveyance. (2 *R. S.*, 3*d ed.*, *p.* 12, § 35, *p.* 59, § 2; *Lovett* vs. *Buloid*, 3 *Bar. Ch. R.*, 147; *Emmons* vs. *Cairns*, 3 *Bar. S. C.*, 245; *Varick* vs. *Edwards*, 11 *Paige*, 290.)

II. The third article of the will contains a devise of Number 327 Third Street, New-York, to the testator's daughters, Margaret and Elizabeth, with a direction that the income therefrom " be equally divided between them, until the youngest arrive at lawful age, when the same may be sold, and the proceeds thereof divided equally between them, and in case of the death of either leaving no heirs, the one surviving to have the share of the one so dying." The testator has here evidently used the word heirs in the sense of issue, and the limitation is precisely like that contained in the previous clause of the will just discussed. But in this devise, the provision for the division of the income not being general, but restricted so as not to extend beyond the period when the youngest shall arrive at full age, it seems natural to refer the survivorship, in case either should die without issue, to the same period. The power of sale, and division of the proceeds "*when*" the youngest shall arrive at lawful age, still further strengthens the idea that, *that* is the period of division. I am accordingly satisfied that each of the daughters takes a vested and absolute estate in an undivided half of this property, subject to a limitation over to the survivor in case either of them die without leaving issue, before the youngest attains twenty-one years of age. (2 *Jarman*, 693; *Brown* vs. *Bigg*, 7 *Vesey*, 279; *Newton* vs. *Ayscough*, 19 *Vesey*, 534; *Mendes* vs. *Mendes*, 3 *Atk.*, 619; 14 *Vesey*, 470.)

III. The fourth article of the will gives to six of the testator's children, *nominatim*, a number of houses situate on leasehold premises, and directs that the income be divided equally among them until the youngest "shall have arrived at lawful age, when the same may be divided equally among them and their heirs." The construction of

this bequest admits of no doubt. It gives a clear, vested, absolute interest, free from any limitation, except that in favor of " heirs " or issue, in case any of the legatees die before the time fixed for a division. The clause in which the testator says, " in case of the decease of any of my children leaving issue, those grandchildren only to receive the proportion, the same as any other of my grandchildren," refers manifestly to death before the division ; and though obscurely expressed, intends, I think, no more than a substitution of children in the right of parents to the shares the deceased parent would have taken if living.

In regard to all these specific bequests and devises, I do not see that the executors have any thing to do with the management of the property. The legatees and devisees of full age and the guardians of the minors, may let the property, receive and divide the income, free of the intervention of the executors. (*Hoxie* vs. *Hoxie*, 7 *Paige*, 191 ; 2 *R. S.*, *3d ed.*, *p.* 13, § 45, 46 *and* 47.)

IV. The testator gave to his wife the use and income of certain real and personal estate, and also the interest of the sum of seven thousand dollars to be invested on bond and mortgage. It is contended that the taxes, expenses and commissions are chargeable upon the estate generally. I think otherwise. This bequest should bear its own burden ; if the testator had intended these charges to be paid out of the general fund, he would have said so ; and there is no presumption of law in favor of the doctrine contended for. The widow is not to be paid a certain fixed sum annually, nor are the executors to invest such an amount as will produce a certain clear net income (*Craig* vs. *Craig*, 3 *Bar. Ch. R.*, 90), but she is to receive the income of particular specified property, and the interest of an investment of seven thousand dollars; and the rest of the estate cannot be taxed so that she may obtain the gross instead of the net income. Such charges are not expenses of the administration of the estate, but expenses of a trust. (*Williams on Executors*, 1398.)

V. The bequest to the testator's grandaughter Urena, is declared by him to "be in lieu of all rights she may have in my real or personal estate, except as hereafter mentioned." The only provision made for this legatee subsequently, is a gift of $200, out of the proceeds of the property given to his wife for life, which on her decease, he directs to be divided among his children. There is a residue of about $3900, undisposed of by the will, except that the executors are ordered to collect it, and pay debts. The question is, whether Urena, the grandchild, as one of the next of kin in the right of her deceased father, is entitled to a share in this residue, as to which the testator died intestate. Where a legacy is given in connection with a condition, that the legatee take nothing more under any other provision of the will, the acceptance of the legacy might bar any other claim under that instrument. I do not see, however, that it is possible for a testator to bar his next of kin from a share of his estate by mere words of negation. If he leaves any thing unbequeathed, the law disposes of it, and he cannot exclude his next of kin from their legal rights, in any other way than by giving his property to some other persons. Thus, in a case where the testator cut off his wife and one of his daughters from any part of his property, and directed they should not receive any benefit therefrom, it was held, the widow and daughter were, notwithstanding, entitled to their share of the residue not bequeathed, under the Statute of Distributions. (*Johnson* vs. *Johnson*, 4 *Beavan*, 318 ; *Pickering* vs. *Stamford*, 2 *Vesey*, 272, 581 ; 3 *Vesey*, 332, 5, 493.) There is nothing in the doctrine of election to conflict with this view, for that is founded on the principle that a person shall not be permitted to claim under any instrument, without giving full effect to it in every respect; but in the present case, the very basis of the claim of the next of kin is, that nothing is said in the will about this residue. As to the residue, therefore, the grandchild cannot be said to come in conflict with the will, for the will is silent on that point,

and it is just because it is silent that she claims under the Statute of Distributions. The decree must, therefore, provide for the distribution of the surplus among the widow and children, Urena coming in by representation, for her father's share. The bequest to the widow, is also in lieu of all interest whatever in the testator's personal estate, but the cases I have just cited, show that her claim to a share of the residue, as widow, is not excluded by the acceptance of the provisions contained in the will. The same principle is applicable to her third, under the Statute of Distributions, as to the share of the grandchild.

The only remaining question submitted, relates to the income of the house left to Urena. The will says, that " *she*" is " to receive the income arising therefrom, until she arrives at lawful age, when she may have the entire control of the same." This, with the previous gift, vests the property in her, and the management of it must devolve upon her guardian to be appointed.