VALENTINE S. WOODRUFF, executor, appellant,

*v.*

SARAH W. LOUNSBERRY, respondent.

1. Executors were directed to invest funds of the estate in bonds and mortgages, on property worth double the amount invested; they were also empowered to sell all of testator's lands. They did so, and in making those sales received mortgages for part of the purchase-money, which was subsequently lost by the depreciation of the premises in value.—*Held,* that such purchase-money mortgages were not the investments of the estate contemplated by the testator, and that consequently the executors, who appear to have acted prudently, were not liable for their loss.

2. Testator's widow was entitled to a life estate in all the property, and she was also one of the executors, and as such collected part of the interest on the securities of the estate from time to time.—*Held,* that if her co-executors were entitled to a commission thereon, it should be paid out of the income itself.

3. Two thousand dollars of the funds were invested by one of the executors in municipal bonds, contrary to law and to the directions of the will. The city afterwards became bankrupt, and proposed a compromise with its bondholders, which was submitted, by the executor and the widow, the executrix, to the beneficiaries of the estate, and they authorized them to accept it, and to receive the substituted bonds, which they did accordingly.—*Held,* that the beneficiaries' action in approving the compromise did not estop them from holding the executor liable for the original illegal investment.

Appeal from decretal order of Union orphans court.

*Mr. J. B. Vredenburgh*, for appellant.

*Mr. G. Collins*, for respondent.

THE ORDINARY.

Smith Woodruff, deceased, late of Rahway, died in the begin-ning of the year 1871. By his will, which is dated January 10th in that year, and was admitted to probate in February following, he gave his wife, Ann Eliza Woodruff, $4,000 and all his household goods. He then authorized and directed his executors (who were his wife, his cousin, Amos P. Scudder, and his nephew, Valentine S. Woodruff) to sell and convey all the remainder of his property, real and personal, as soon as possible after his decease, and to invest the proceeds thereof immediately upon first bond and mortgage on property worth double the amount, or in stocks or bonds of the United States or the state of New Jersey, and to pay the interest and profits whatsoever thereof to his wife semi-annually, (beginning six months after his death), or oftener, for her life. He then gave, after her death, the principal to his brothers and sisters, substituting their issue in case of their death &c. All the executors proved the will. Mr. Scudder subsequently died—in 1874. A final account was filed by Mrs. Woodruff and the appellant, as sur-viving executors, in 1875. In that account they charged themselves with the balance, $8,852.88, of an account rendered in 1872, and the amount, $10,117.50, received from the sale of the testator's real estate; and they received commissions, $384.70, upon the latter amount. The intention appears to have been to allow the commissions at the rate fixed by statute; but a little more was allowed, undoubtedly by mistake. The account showed a balance against the accountant of $17,160.82. The widow died July 5th, 1884. In March, 1885, the appel-lant, as surviving executor, filed his account, in which he charged himself with the balance of the final account of 1875, $17,160.82, and the interest and income, $9,279.99, of the estate collected by him since that account, and $300 received

from Amos Woodruff for the price of two plots of land sold by Mrs. Woodruff and the appellant as executors, to him, in May, 1883. The plots were part of some land of the testator which had previously been sold by the executors and a mortgage taken for part of the purchase-money. Under foreclosure of that mortgage, they bought in the property, which consisted of those two plots and another still held by the appellant, and mentioned in his account as part of the assets of the estate. By his account, the appellant prayed allowance for certain moneys ($8,640.75 altogether), income paid over by him to the widow; also, for certain losses on securities charged in the account of 1875. The losses are designated as follows: Robinson's bond, $200; Krook's bond, $1,140, with costs of foreclosure, $154.21, less the value, $50, of the lot above mentioned, now held by the appellant; loss $1,684.58 on $3,000 Rahway city bonds (in which the executors invested money of the estate), and bond and mortgage of T. S. Dick, $240.

The Robinson, Krook and Dick bonds were all taken for purchase-money of land of the testator sold by the executors. The Robinson and Dick mortgages are said to be of no value, the property not being now worth the costs of foreclosure. The Krook mortgage is the one before mentioned as having been foreclosed, and under the proceedings upon which the property was bought in. The orphans court, upon exceptions filed to the account, ordered that the securities mentioned in the account, which were taken upon the sale of the testator's real estate, and for which allowance was claimed, be allowed as stated; that commissions be allowed the accountant on the income received by him and paid over to the widow; that a counsel fee of $50 be allowed to the accountant and exceptant respectively; that the accountant be charged with the loss upon the Rahway bonds, and that an investment of $4,000, mentioned in the account, made on fourth mortgage of real estate of the accountant in the city of New York (the prior mortgages on that property amount to $20,000), was made contrary to law, and that it be not allowed. From that order, so far as the loss on the Rahway bonds was concerned, the accountant appealed, and in the answer to the

548   PREROGATIVE COURT.   [40 Eq..

Woodruff *v.* Lounsberry.

petition of appeal the respondent appealed from so much of the order as allowed commissions upon the income paid to the widow and allowed counsel fees and the losses on mortgages taken on sale of the testator's property. The questions for consideration and adjudication, therefore, are whether the appellant is entitled to allowance for the losses on the Robinson, Dick and Krook mortgages; whether he should be allowed commissions on the income paid to the widow; whether he should be allowed counsel fees, either in his administration (his account contained a. claim for counsel fees) before the exceptions were filed, or upon those exceptions, and whether he should bear the loss upon the Rahway bonds.

As will have been seen, the will directs the executors to sell and convey all the testator's real and personal property, except so much of the latter as was thereby specifically bequeathed, as soon as possible after his decease, and invest the proceeds for the benefit of his widow. The executors appear to have sold the land in October, 1873, and to very good advantage. It appears to have consisted of a piece of salt meadow and a tract of upland of about twenty-three acres. They sold the former for $200.. The latter they divided into twelve lots and sold them for $9,- 917.50 in the aggregate. On the sale of that property they gave liberal terms to purchasers. The terms were forty per cent. of the purchase-money to be paid in cash and the balance, sixty per cent., to be secured by mortgage of the property, payable in five years. They appear to have obtained good prices. The three lots sold to Krook brought $1,900. According to the evidence they are now worth only $350. Although the executors were, by the will, directed to invest the proceeds of the sale of the property upon first bond and mortgage of property worth twice the amount invested, or in stocks or bonds of the United States or of this state, it would not be just to hold them bound by that provision in taking mortgages for part of the purchase-money of the property. Those mortgages were not taken as an investment of proceeds of the sales, but to secure the payment of part of the price at which the property was sold. They were themselves proceeds of the sales. In taking the mortgages for which the account-

.ant asks allowance the executors appear to have acted in good faith and for the best interest of the estate. They therefore ought not to be charged with them. There is no error in the order of the orphans court so far as they are concerned.

The next question is as to the commissions. As has already been stated, the debit side of the account consists, with the exception of a charge of $300 for the price of land sold to Amos Woodruff, of collections of income, and the payments are of income to the widow and taxes, $12.28, upon the real estate. It does not appear by the account that any of the investments were changed after the filing of the account of 1875, except the Rahway bonds, which will be spoken of hereafter. The proof is that the widow was desirous of collecting the interest herself, and that up to 1873 she had all the securities of the estate in her hands, and collected the income. In that year she was induced to deliver the securities into the custody of Amos Woodruff for safe keeping, and she did it only upon receiving a bond against loss from so doing. Even after that time she collected part of the interest herself. The accountant insists that he is entitled to commissions upon the income collected by him and paid over to her, and the orphans court so held. But this is an error. The commissions for collecting and paying over the income should have been paid out of the income. *Danly* v. *Cummins 4 Stew. Eq. 208 ; Booth* v. *Ammerman, 4 Bradf. 129 ; Pinckney* v. *Pinckney, 1 Bradf. 269 ; Spangler's Estate, 21 Pa. St. 335.* Upon any moneys on which he may be entitled to commissions in this account, the accountant should be allowed commissions at the rate of two per cent., in view of the fact that commissions have been already allowed in the account of 1875 at full statutory rates upon more than $10,000. *Tucker* v. *Tucker, 6 Stew. Eq. 235.*

There should be no allowance of counsel fees, except in the matter of the exceptions. Upon them the accountant was partially successful. There is no error in the order under consideration on that head.

As to the loss upon the Rahway bonds : The investment of the money of the estate in those securities was not only contrary

to law (*Tucker* v. *Tucker, ubi supra*), but contrary, also, to the plain and explicit directions of the will.   But it is urged on the part of the accountant that the distributees, including the respondent, released the appellant and his co-executor from all liability on that score by an instrument signed by them, and executed in February, 1883.   Before that time the city of Rahway had become bankrupt, and had made default in the payment of its bonds, and it had continued bankrupt and in default up to that time.

It then proposed a compromise with the bondholders by exchanging the bonds held by them for new ones of the city for thirty-five per centum of the principal and interest accrued upon the former.   Before making such exchange the appellant and his co-executor, Mrs. Woodruff, obtained the before-mentioned agreement from the distributees.   It recites that the executors are the holders of bonds of the city to the amount of $3,000 and interest, and that the city proposes the compromise; and the distributees thereby consent and agree with the executors that the latter may give up, surrender and exchange the bonds for the new ones; and they authorize them to surrender the former and take the latter in place thereof "according to their best judgment and discretion, without holding them liable for any loss or damage that may or might result from so doing."   The agreement has reference to the proposed exchange alone.   It makes no reference to the illegality of the action of the executors in making the investment in the bonds.   It discharges the executors from liability for any loss or damage that may result from the exchange, but goes no further and does no more, either expressly or by implication.   Those who signed that instrument cannot question the propriety of the action of the executors in making the exchange, but they are free to question the legality of the original investment, and the agreement in nowise estops them from demanding indemnity for the consequences of that illegal action.   The orphans court was right in charging the appellant with the loss on that investment.

It appears from the evidence of the appellant that in making the investment, four bonds of $500 each were bought (December

9th, 1873) for $1,840, and that the appellant paid to the widow as profits the difference, $160, between the par value of the bonds, $2,000, and the price, $1,840, paid for them.   Is is urged that the appellant should be charged with the $160.   But there was no exception on this point, and no mention is made of it in the answer to the petition of appeal.   Seeing that the appellant is now required to make good the loss to the estate to the extent of the $2,000, with interest, after crediting the amount of the new bonds taken in exchange, there is no ground for this claim.

The order appealed from will be reversed so far as the allowance of commissions upon the income is concerned.   In other respects it will be affirmed.   The appellant will be required to pay the costs of the appeal but not counsel fees.