In the Matter of the Estate of FRANCIS H. GREFE, SR., Deceased.

Surrogate's Court, Kings County, May 9, 1931.

*Wingate & Cullen,* for substituted trustee.

*Grover C. Sniffen,* for Georgianna Grefe and others.

*James S. Price,* for Frances Grefe Flynn, individually and as executrix of the last will and testament of Catherine Grefe, deceased.

*Murray & Manson,* for the respondent Amy A. Grefe, individually and as executrix of Francis H. Grefe, Jr., deceased.

*Clinton M. Flint,* for Evelyn Hilig.

*Arnold M. Schmidt,* special guardian for Frances M. Hilig, an infant.

Wingate, S. In this case the court has been favored with an unusual opulence of briefs and written arguments by the various parties in interest. When all points in agreement between the litigants are analyzed, however, it becomes apparent that the complications existing are largely in respect to facts, and that when these are once placed in proper relation, a single basic difference exists.

This testator died on December 25, 1916, leaving a will which was admitted to probate by this court on January 11, 1917. So far as here pertinent, his testamentary directions consisted of a devise of the family residence to his wife for life with a further provision that " upon her death, said premises shall form part of my residuary estate." Testator then directed a division of the remainder of his estate into three parts, the first of which he gave to trustees for the life of his widow, directing that " upon her death, the said share shall form part of my residuary estate for the benefit of my children as hereinafter provided; " and the second two he disposed of in the item of his will numbered " fifth."

This item, which gives rise to the present controversy, directed as follows: " I give, devise and bequeath the remaining two-thirds of all the rest, residue and remainder of my said estate, including, upon the death of my wife, the property hereinbefore set apart for her benefit, to my said executors, to divide into as many equal shares or portions as I shall leave children me surviving, and issue of any child who shall have died before me, such issue to take the parent's share, and I direct my said executors to dispose of the said shares or portions as follows:

" I. To transfer and convey one of said shares to my son, Bernard H. Grefe, to whom I give and devise the same, in fee simple and absolute property.

" II. To invest one of said shares and keep the same invested, and to collect and receive the rents, income and profits therefrom, and to pay the same to my son, Francis H. Grefe, Jr., during his life, or until he shall attain the age of forty years; and upon his attaining said age, to pay over the principal of said share to him. If my said son shall die before attaining the age of forty years leaving issue, then upon his death to pay over the principal of said share to such issue, in equal shares, *per stirpes* and not *per capita.*

If my said son shall die under said age without leaving issue, I authorize and empower him to dispose of his said share to such person or persons and in such proportions as he shall by last will and testament or instrument in the nature thereof direct and appoint, and in default of such testamentary disposition, to pay over the principal of his said share to his heirs at law and next of kin."

By the 3d subparagraph he erected a trust in a further one-sixth part for the life of his daughter Mary Tamke, with remainder on her death to her issue *per stirpes*, subject to a further direction that if she died without issue, it should pass to such persons as she might appoint by will or, failing such appointment, to her heirs at law and next of kin.

In paragraphs " IV," " V " and " VI " trusts respectively of one-sixth each were erected in identical terms for testator's other daughters, Annie Hilig, Frances M. Grefe and Sophia Grefe.

Bernard H. Grefe survived the testator but predeceased the life tenant, dying on October 17, 1920. Francis H. Grefe, Jr., died on October 24, 1925, having already attained the age of forty years, and having, prior to his death, received his portion of the residuary estate other than his share of the portion reserved for the life estate of the widow. Mary Tamke predeceased testator, leaving three children; Annie Hilig died intestate on January 29, 1920, leaving issue, and Sophia Grefe died January 19, 1920, intestate and without issue.

The only child of testator who survived the life tenant was Frances M. Grefe, who is now living.

The life tenant died on June 6, 1930.

All parties are agreed that five out of the six portions of the remainder of the estate held for Catherine Grefe, the life tenant, should pass as follows: One-sixth to the executors of Bernard H. Grefe, one-sixth to the issue of Mary Tamke, namely, Frances Tamke, Margaret Tamke and Alfred Tamke, one-sixth to the issue of Annie Hilig, namely, Evelyn Hilig and Frances Hilig; one-sixth to the trustees for Frances M. Grefe; and one-sixth to the next of kin of Sophia Grefe. The foregoing devolutions are obviously correct.

The parties are further agreed, *first*, that the real estate, consisting of the family residence in which the life tenant had a legal life estate, was equitably converted, and should be treated as personalty. In this conclusion the court concurs on the authority of *Salisbury* v. *Slade* (160 N. Y. 278, 289). *Second*, that the interest of Sophia Grefe Bennett is to be distributed to her next of kin as determined by the statute in force at the time of her death, exclusive of her husband, who has renounced all rights therein.

The court also concurs in this construction on the authority of *Matter of Storum* (220 App. Div. 472); *Matter of Terwilligar* (135 Misc. 170, 187; affd., 230 App. Div. 763) and *Matter of Ferens* [*Klyszewski*] (140 Misc. 241).

There remains for consideration, therefore, merely the question of the manner of devolution of that one-sixth of the property held for and by the life tenant, which the will set apart for Frances H. Grefe, Jr. On the one hand certain of the parties maintain that this should be paid to his executrix, while the opposing contention is that the original testator died intestate in respect to this share, and that it passes to his next of kin.

In support of these diverse contentions, the opposing parties cite many cases of more or less relevancy. It is, however, primary that in questions of testamentary construction previous decisions construing the language of other wills are usually of negligible value. (*Matter of Durand*, 250 N. Y. 45, 53; *Matter of Bump*, 234 id. 60, 63; *Matter of Storey*, 134 Misc. 791, 795; *Matter of Quimby*, Id. 296, 301.) In the last analysis, as noted in *Matter of Buechner* (226 N. Y. 440, at p. 444), the primary canon of construction " to which all others are subordinate " is " that the intention of the testator is to be sought in all his words, and, when ascertained, is to prevail."

When the will at bar is read as an entirety, it is obvious that testator's testamentary plan was to provide adequately for his wife for the term of her life, giving her the family residence for such period, and the income from one-third of his estate for her support and maintenance, and that the balance of his estate was dedicated in equal shares to his children or their representatives. In accomplishing this primary purpose, one share was given to Bernard outright; another was given to Francis H. Grefe, Jr., outright, provided he attained the age of forty years (which condition met with compliance), while the similar equal shares for the four daughters were placed in trust for them subject to mutually identical directions, granting them the income therefrom, respectively, for life, and providing that on their several deaths the property should pass to their issue, if they had any, or, if they died childless, that it should pass to such persons as they should appoint by will, or, finally, in default of either limitation, to their next of kin.

It is pertinent in this connection that similar alternate directions respecting the remainder of the interest for Francis H. Grefe, Jr., were inserted in identical terms, such provisions to be and remain effective, however, only during the time that his interest in the remainder was to be held in trust for him.

In other words, it was obviously testator's intention that those

of his children who, in his estimation, were competent to care for their own property should receive it outright; whereas, those whom he did not deem equally capable should have the benefit of its use with remainder over, limited strictly to their immediate families or, in default thereof, to their nominees or next of kin.

At the time the will was drawn, Bernard H. Grefe was the only member of the class of those whom testator deemed absolutely capable of managing their own property.

His other five children were apparently in his opinion still in need of supervisory aid.

His directions respecting Francis H. Grefe, Jr., indicate a combination of feelings midway between those demonstrated respecting Bernard, and those shown in regard to the daughters, to the effect that until Francis attained the age of forty years he was to be classed with the daughters, and have his share of the estate supervised, but when he attained that age, he was classifiable with Bernard, and deemed entirely competent to look out for his own affairs, and entitled to receive his whole share of the estate in possession.

The result seems obvious that the share of the estate for Francis H. Grefe, Jr., given by the 2d subdivision of item 5 of the will was that variety of the estate which has been denominated as " vested, subject to be divested " or " contingently vested," the contingency being that he should attain the prescribed age. When that age was reached, the sole prerequisite to complete vesting in him of his one-sixth of the remainder was complied with, and he became the absolute owner of that property which consisted of one-sixth of all the remainder estate not subject to the life estate of the widow, and also to one-sixth of that portion of the property upon which her life interest was imposed, and which could not come into his possession until the termination of her life estate therein.

The adoption of this view results in a compliance with one of the most fundamental canons of construction, namely, that any intestacy will be voided whenever possible. (*Matter of McGowan,* 134 Misc. 409, 411; affd., 228 App. Div. 779; affd., 254 N. Y. 513; *Matter of Rossiter,* 134 Misc. 837, 840; affd., 229 App. Div. 730; affd., 254 N. Y. 583; *Matter of Weissmann,* 137 Misc. 113, 119; affd., N. Y. L. J. Jan. 27, 1931, p. 2165; *Matter of Blasius,* 134 Misc. 753, 758.) It further produces that equity of division among the children of testator which has frequently been held to be most favored. (*Matter of Harden,* 177 App. Div. 831, 835; affd., 221 N. Y. 643; *Matter of Berbling,* 134 Misc. 730, 732; *Matter of Balsamo,* 136 id. 113, 115, 116.)

If the opposing contention were made effective, both of these fundamental rules would be violated.

Those favoring such contrary construction cite the decisions respecting the Bostwick will, reported under the titles of *Matter of Bostwick* (236 N. Y. 242) and *New York Life Insurance & Trust Co.* v. *Winthrop* (237 id. 93), as authorities in their support. Whereas, the will there construed possesses certain points remotely similar to that in the case at bar, it also possessed distinct dissimilarities, since as noted by the court in the former decision at page 246: "The trust for the son was not to be divided into halves until it began, and it was not to begin until the prior trust had ended." In the present case the trust began immediately upon the death of the testator, and the son immediately received an interest therein, and further became entitled, on attaining the age of forty, and actually received all portions of his share not subject to a prior use.

In the opinion of the court the decision of the Court of Appeals in *Matter of Ossman* v. *Von Roemer* (221 N. Y. 381) is much more in point on the facts, although, of course, it is a familiar truism that "no will has a twin brother."

In that case the court said (at p. 387): "We think that when they attained the age of twenty-one years, survivorship ceased to be a condition, their remainders became vested, and their estates passed on to their heirs. It is true the only gift is found in a direction to pay and divide upon majority. In the event of death before that time, there is a gift over to others. Up to that time, the remainder may have been contingent. If that is so, the contingency ceased when majority was attained (*Fulton Trust Co.* v. *Phillips*, 218 N. Y. 573). The conditions on which the right to division depended were then satisfied. The right was then perfect. Only the outstanding trust for the widow has postponed its enjoyment.

"To hold otherwise would ignore the principle of construction which favors the vesting of estates (*Hersee* v. *Simpson*, 154 N. Y. 496). It would ignore also the avowed struggle of courts to escape even partial intestacy (*Meeks* v. *Meeks*, 161 N. Y. 66, 71)."

On the main point at issue, therefore, the court determines that a one-sixth interest in the property in which Catherine Grefe had a life estate as well as in the balance of the estate became validly vested in Francis H. Grefe, Jr., upon his attaining the age of forty years, and that this interest passes in a manner similar to the like absolute interest of his brother Bernard.

Certain of the parties have filed objections to certain of the charges in the accounts and have thereby raised issues of fact

which can be determined only upon a hearing. These appear to be of minor importance, but, of course, if insisted upon, must be determined after the presentation of evidence. Unless withdrawn, they may be brought on for hearing by either party on five days' notice to those interested therein. Proceed accordingly.