In the Matter of the Estate of JOHN BOYLE, Deceased.

Surrogate's Court, Kings County, June 15, 1931.

*Strauss, Reich & Boyer*, for the petitioner.

*Hardy, Stancliffe & Hardy*, for Noah A. Stancliffe and William C. Strange, parties in interest.

*Cyrus S. Jullien*, special guardian, for J. Frank Secor, Jane Secor, J. Wilbur Secor and Walter Rothwell Secor, infants.

WINGATE, S.  Three questions are presented to the court for determination upon this accounting.  The first relates to the propriety of requiring the trustee to file additional bonds in the three remaining trusts.  No opposition is made by him to this contention of the special guardian, and he will, therefore, file bonds of $18,000 in each of the three remaining trusts to cover his acts respecting those portions of the corpus of each which are not subject to joint deposit.  It is unnecessary that such bonds should expressly cover the trustee's acts as a director of John Boyle & Co., Inc., since, as a matter of law, they will do so in any case, so far as is necessary for the protection of all concerned.  (*Matter of Auditore*, 249 N. Y. 335.)

The payment of the objected item of attorneys' fees and its inclusion in the present account were proper (*Matter of Arkenburgh*, 38 App. Div. 473, 474), and the objection thereto must be overruled.

This leaves for consideration questions respecting the allocation of a number of expenditures of the trustee which he has charged to principal and which the special guardian contends should be payable from income.  The items to which objections are thus interposed are thirty-seven in number but may be classified under five different headings.  Six are for care of decedent's cemetery plot and aggregate $240.  Four are for rental of safe deposit box in which securities of the trust were kept, and total $50.  Seven, amounting to $350, are for services of a trust company which, pursuant to the order of this court, acted as custodian of certain securities of the trust for the purpose of reducing the penalty of the trustees' bonds.  Thirteen, totalling $2,618, were for trustees' bond premiums, and eight, aggregating $1,155.28, were for taxes on a parcel of unimproved real estate owned by the testator and contained in the corpus of the trusts.

In the decision of these questions the testamentary directions of the testator and his circumstances and beneficiaries become important.  (*Furniss* v. *Cruikshank*, 230 N. Y. 495, 501.)  So far as is here material, these disclose that the will at bar was probated in July, 1905.  This document is quite long and many of its directions are presently unimportant.  The use of the family residence was granted to the wife for life or widowhood and certain pecuniary legacies were given, payable out of specified property.  Possession of the residue of the estate was postponed during the lives of testator's wife and children, its income being meanwhile payable to them in designated proportions.  On the respective deaths of the several children the payment of the remainders to their issue was directed.  Powers of sale of real estate were given the testamentary fiduciaries together with broad powers of management of real

estate. The "ninth" item of the will read: "I direct that my burial plot in Woodlawn Cemetery in the City of New York shall be used for the burial of my wife and children, and of their present husbands or wives or their families."

The present accounting shows a balance of principal in the hands of the trustee of $893,236.80, which includes a vacant plot of land on what is now known as Bailey avenue in the borough of The Bronx. This plot was a portion of the property owned by the testator and has been retained by the fiduciaries. The annual taxes thereon form the basis of one of the objections herein.

Much of the corpus of the estate is invested in the stock of testator's business. For the purpose of reducing the penalty of the bonds of the fiduciaries orders have been made, pursuant to section 106 of the Surrogate's Court Act, permitting the deposit of these securities with a trust company, and the resultant expense for such custodial services is the foundation of another objection. A third is for expenses of the safe deposit box in which the remaining securities were kept; a fourth for the premiums on the fiduciaries' bonds covering such securities in their possession, and the final one relates to expenses for annual care of the family cemetery plot referred to in the "ninth" item of the will.

Reasonable funeral expenses are, by statute (Surr. Ct. Act, § 216), made a primary charge upon all assets of an estate (*Matter of Smallman*, 138 Misc. 889, 892) and have uniformly been accorded favored treatment. Classifiable under such expenses are moneys paid for perpetual care of the burial plot of the deceased. (*Matter of Schaaf*, 120 Misc. 292, 293, 294; *Matter of Brundage*, 101 id. 528, 537; affd. *sub nom. Matter of Farmers' Loan & Trust Co.*, 186 App. Div. 722; mod. on other grounds, 226 N. Y. 691; *Matter of Maverick*, 135 App. Div. 44, 45; affd., 198 N. Y. 618; *Matter of Sharff*, 136 Misc. 627, 628; *Matter of Dougherty*, 64 id. 230, 231; *Matter of Meek*, 113 id. 301, 304; *Matter of Smallman*, 138 id. 889, 910.)

Being a basic obligation of the estate, such expenses are payable before the making of any beneficial distributions, and are, therefore, a primary capital charge. Ordinarily a lump sum is paid at the outset to assure such perpetual care, but the court can see nothing inherently objectionable in the course here pursued, of paying this expense in annual installments. Certainly the adoption of such a course cannot be deemed to vary its inherent nature.

It is, therefore, determined that since such expenditure, in a reasonable amount, for perpetual care of decedent's cemetery plot is a proper charge against the primary funds of the estate, such annual payments for the same purpose are properly payable from the same source, and this objection to the account is overruled.

In approaching the solution of questions relating to the proper allocation of expenses between principal and income, it has been frequently determined by controlling authority that it is " the general rule that the principal of the fund must be preserved intact " and that " to justify such an exception to the rule the intent should be expressed in the very clearest manner." (*Matter of Stevens*, 187 N. Y. 471, 476.) (See, also, *Stevens* v. *Melcher*, 152 id. 551, 569, 570.) This has been emphasized since very early times. Thus it was said in *Pinckney* v. *Pinckney* (1 Bradf. 269, 275): " The testator gave to his wife the use and income of certain real and personal estate, and also the interest of the sum of seven thousand dollars to be invested on bond and mortgage. It is contended that the taxes, expenses and commissions are chargeable upon the estate generally. I think otherwise. The bequest should bear its own burden; if the testator had intended these charges to be paid out of the general fund, he would have said so; and there is no presumption of law in favor of the doctrine contended for. The widow is not to be paid a certain fixed sum annually * * * but she is to receive the income of particular specified property * * * and the rest of the estate cannot be taxed so that she may obtain the gross instead of the net income."

This decision is cited with approval and followed in *Whitson* v. *Whitson* (53 N. Y. 479, 481), and its general doctrine has repeatedly been reaffirmed by the Court of Appeals. (*Matter of Albertson*, 113 N. Y. 434, 439; *Clarke* v. *Clarke*, 145 id. 476, 480, 481; *Stevens* v. *Melcher*, 152 id. 551, 569, 570; *Matter of Tracy*, 179 id. 501, 511; *Spencer* v. *Spencer*, 219 id. 459, 465.)

In this, as in all other matters of testamentary construction, the determining criterion is testator's intention. Where this is clear, it will be controlling (*Matter of Albertson*, 113 N. Y. 434, 439; *Clarke* v. *Clarke*, 145 id. 476, 480; *Matter of Tracy*, 179 id. 501, 511), but in the absence of express direction in the will, courts in deciding these as well as related questions, are remitted to their conceptions of what the average individual of the community would have desired. In all cases of this type the testator has made a double gift of a part of his property, namely, its ultimate possessory enjoyment, and its use pending the arrival of the time when the first-mentioned gift is to take effect. Obviously, any withholding of actual physical possession from the beneficiary involves the interposition of third parties to effectuate the prior use, and requires expenditures both as compensation for the services of such third parties and for the preservation of the subject-matter of the ultimate gift. As was said by the Appellate Division for the Third Department in *Matter of Frost* (184 App. Div. 702, at p.

704): " A life estate contemplates a usufruct; a right to enjoy a thing the property of which is in another, and draw from the same all the profit, utility, and advantage which it may produce, provided it be without altering the substance of the thing (39 Cye. 874), and this necessarily involves the idea. that the legitimate expenses shall come out of the income."

As pointed out by Judge CARDOZO in *Matter of Ardrey* (232 N. Y. 109, 110, 111), if any other course be adopted, and the ordinary. expenses of the maintenance and management of the property during the period of the withholding of possessory ownership be deducted from principal, " the exhaustion of the fund will not be long postponed." It will inevitably be depleted from time to time until the vanishing point is reached and the expressed intention of the testator's gift of the remainder will be defeated. These principles received a passing consideration from this court in its opinion in *Matter of Shepard* (136 Misc. 218), wherein some of the leading authorities on the subject were reviewed. In spite of this fact, and of the repeated reaffirmations of the basic governing principles in the periodic pronouncements of the Court of Appeals, the erroneous conception still persists in many quarters that even in the absence of express testamentary direction to that effect the ordinary expenses attendant upon the management of the property during the continuance of the life estate are to be met by a depletion of the beneficence to the remainderman. This is apparently due to a complete misconception of the express and implied effect of the determination of the Appellate Division of the First Department in *Chisolm* v. *Hamersley* (114 App. Div. 565). That decision is unquestionably a sound determination in respect to the matters therein decided, but to torture it by an interpretation running directly counter to the reiterated statement of basic principles by the Court of Appeals is to do a distinct disservice to the distinguished tribunal which rendered it. The tenor and limits of this case cannot be better defined than is done in the words of Surrogate KETCHAM in *Matter of Long Island Loan & Trust Co.* (79 Misc. 176). After noting that the case arose under a deed of trust he says (at p. 177): " There was, therefore, no need of an annual accounting and no danger that the principal might be seriously impaired by the costs of many successive accountings. The action was brought for the final adjustment of the trust both as to income and principal and the only question litigated was whether the entire fund was large enough to justify full commissions to each trustee. The burden of the inquiry almost wholly concerned the principal fund."

In the ordinary case, therefore, the determination of whether

a particular item of expense is to be charged to principal or income in the absence of express testamentary directions covering the subject, must be viewed from the standpoint of the remainderman. If and to the extent that a particular expenditure enhances the value of the property passing to him, it is a proper charge against the corpus which has been dedicated to him, but if it does not produce any increase in such value, it is not chargeable against his interest unless it would have been a legitimate expense had the life tenant predeceased the testator with a resulting lapse in the benefaction given in the intervening estate. This ordinarily applicable basic principle is supported by all the considerable number of decisions cited in the *Shepard* opinion as well as by the opinions in the cases to which reference has hereinbefore been made.

Whereas the basic principle just stated seems to be irretrievably established by the repeated pronouncements of ruling authority, the cases show one apparent exception respecting expenses in connection with unproductive property incurred during the continuance of the life estate. The two pertinent determinations in this connection are *Lawrence* v. *Littlefield* (215 N. Y. 561) and *Furniss* v. *Cruikshank* (230 id. 495). In both of these cases, as in the proceeding at bar, the fiduciaries of the life estate were given powers respecting the holding and sale of the property of the estate, and there as here, they elected to retain for considerable periods unimproved real estate of the testator. The first basic principle applicable to situations of this type is stated in *Lawrence* v. *Littlefield* (215 N. Y. 561, 573) to be that " Where a testator gives property to trustees, with an absolute trust for conversion, and with a discretion as to the time at which the conversion shall take place, if, from any causes whatever, arising from the exercise of the discretion and judgment of the trustees, the conversion is delayed, then the tenant for life is not to be prejudiced by that delay, but is to have the same benefit as if the conversion had taken place within a reasonable time from the death of the testator, which is usually fixed at twelve months from that period."

The second applicable basis of decision is found in *Furniss* v. *Cruikshank* (230 N. Y. 495, 500), as follows: " If, however, there is no imperative power of sale or equitable conversion, if the testator directs the trustees to sell only if and when they think it wise, the argument falls. In such a case there is a clear declaration that what the testator has in mind is to benefit the principal of his estate. It is that he considers, not the needs of the life tenant (*Yates* v. *Yates*, 28 Beav. 637).

" We must, therefore, determine whether the testator here designed an imperative power of sale with discretion only as to

the time of its exercise or a power that in the trustees' discretion might never be exercised at all. If there is any ambiguity in the will, we may regard the situation of the testator's property at the time of his death, the condition of the beneficiaries and the circumstances surrounding the execution of the will (*Spencer* v. *Spencer*, 219 N. Y. 459)."

In *Lawrence* v. *Littlefield* the determination was that the direction for sale was expressly mandatory. In *Furniss* v. *Cruikshank* a similar construction was attained by the factual demonstration that a contrary conclusion would result in the entire destruction of any value of the life estate by reason of the fact that the carrying charges of the unimproved realty exceeded the entire income from the balance of the trust.

The applicable directions in the will at bar are contained in the " tenth " and " fifth " items, and read:

" *Tenth.* I hereby authorize and empower my executors and trustees hereinafter named, their survivor or successors to sell at public or private sale and to let or lease and collect the rents from all or any of my real estate and to execute the necessary papers therefor."

The " fifth " item, so far as applicable to this portion of the estate, directs the executors to pay to testator's wife " three-quarters (3/4) of the income from all other sources and the remainder of the income to my children. * * *

" On the death of my said wife, to divide said residuary estate into as many equal parts as I shall then have living children, and to pay the income from one of such portions to such of my said living children during his or her natural life and on his or her death to pay the principal to his or her descendants."

The widow, Phoebe A. D. Boyle, died on January 28, 1923, at which time the trust for her benefit terminated, and the secondary trusts for testator's children as to the entire corpus came into effect. The present accountings cover only the period since the death of the widow.

Whereas, during the life of the widow, the terms of the will indicate merely a discretionary power of sale, the direction for division on her death is mandatory. This results in an equitable conversion of the realty, since no physical division would be possible in its absence. (*Matter of Gargiulo*, 138 Misc. 90, 98; *Matter of Harris*, Id. 287, 288, and cases cited.) (See, also, *Matter of Grefe*, 140 Misc. 134.) As a result, the power of sale from that time became mandatory with the result that the principle of *Lawrence* v. *Littlefield* applies and the carrying charges of the unimproved realty

were not a proper charge against the life estates but were properly payable from principal. Since all of the entries in the account to which objection is made on this score were for payments subsequent to the death of the widow, these objections cannot be sustained.

It follows, therefore, that the objections of the special guardian must be disposed of as follows:

1. The accountant will file bonds of $18,000 in each of the continuing trusts to cover his action in a fiduciary capacity.

2. The objections to the item for attorneys' fees and to the payments from principal aggregating $1,158.28 for taxes on the unimproved real estate and $240 for care of cemetery plot are overruled.

3. The objections to the charge to principal account of sums totaling $50 for rental of safe deposit box, of $350 for custodial services, and of $2,618 for trustees' bond premiums, are sustained, and these items will be charged to income.

Proceed accordingly.