In the Matter of the Estate of JAMES SURPLESS, Deceased.
Surrogate's Court, Kings County, March 9, 1932.

*McLeer & Dobson,* for Catharine L. Surpless.

*Abner C. Surpless,* for executors Joseph D. Surpless and Abner C. Surpless.

*Charles E. Fiske,* special guardian.

*Francis D. Murphy,* for Eleanor L. Surpless.

*John D. Armstrong,* for petitioner Abner C. Surpless.

*Harvey O. Dobson,* for Catherine L. Lyons.

WINGATE, S. This is an application for the judicial settlement of the accounts of executors. The petition was made by two of the executors and their account has, with certain exceptions, been adopted by the third. In addition to the questions raised by these exceptions, objections have been interposed by a daughter of the decedent. An adequate consideration of the legitimate issues of the case requires an examination of certain features of the history of the estate, as ascertainable from the papers on file in this court, of which judicial notice may be taken. (*Slater* v. *Slater,* 208 App. Div. 567, 571; affd., 240 N. Y. 558; *Brooklyn Public Library* v. *City of New York,* 222 App. Div. 422, 436; affd., 250 N. Y. 495; *People ex rel. Platt* v. *Rice,* 80 Hun, 437, 442; affd., 144 N. Y. 249; *Devine* v. *Melton,* 170 App. Div. 280, 282; *Shaw* v. *Shaw,* 155 id. 252, 253; *Silverstein* v. *Brown,* 153 id. 677, 680; *Farmers' L. & T. Co.* v. *Hotel Brunswick Co.,* 12 id. 628.)

James Surpless died on July 7, 1909, leaving a will which was admitted to probate in this court on September ninth of the same year. By its 2d item he bequeathed to two of his executors, Joseph D. Surpless and Abner C. Surpless, as trustees, the sum of $30,000, " realized from the sale of any and all property owned by me to be set aside in trust for my wife Catharine Loretta Surpless and my daughter Eleanor Loretta Surpless, the income of which said sum is to be used for the proper support and maintenance of my wife and daughter, upon my wife's death, said income of said principal sum to be used for the proper support and maintenance of my daughter during the rest of her natural life * * *."

In the succeeding item, numbered " third," testator provided: " In case my wife should marry again, I direct my executors to pay her the sum of $10,000 in lieu of all claim against my estate, the balance, $20,000, to be held in trust by my executors for the benefit of my daughter until she attain her majority when the said principal shall be given to her." In the 4th item he gave the family residence, 622 Willoughby avenue, with the personal property therein contained, to his wife and daughter. By the 5th and 6th he gave his sons Thomas John and Abner Curtis Surpless general legacies of $7,500 and $10,000 each; by the 9th he bequeathed a general legacy of $1,000 to his niece, Edna Margaret Eleanor Surpless; and by the 10th he constituted his sons Oliver Boyd, James, Jr., Thomas John, Joseph Duane and Abner Curtis, and his infant daughter, Eleanor Loretta Surpless, residuary legatees, each to receive one-sixth part.

The 11th item read: " I appoint my wife Catharine Loretta Surpless Executrix, and my sons Joseph Duane and Abner Curtis Surpless to be the Executors of this my will, giving unto them full power to sell at public or private sale, *at their discretion*, any and all of my real and personal property, and I hereby order and direct that no bond of any kind be required of them or any of them." (Italics in original will.)

The pertinent legal results of these directions are obvious, and may be summarized as follows:

*First.* The devise and bequest of the family residence and contents, to the wife and daughter in the " fourth " item, was entitled to satisfaction prior to all other gifts, and amounted to an absolute conveyance thereof to these beneficiaries subject only to the claims of creditors or for administration expenses, provided they could not be satisfied from other portions of the estate.

*Second.* The pecuniary legacies of the will were general bequests.

*Third.* The trust provisions in the 2d and 3d items were preferred over all other gifts in the will except the devise of the house and contents, by reason of the fact that they were given for the support and maintenance of the wife and daughter, who were natural dependents of the testator. (*Matter of Smallman*, 138 Misc. 889, and cases cited on pp. 908, 909 and 910.)

*Fourth.* The provisions of the " third " and " fourth " items constituted a single composite direction respecting the trust fund. It became the duty of the executors to pay over to the trustees the sum of $30,000 for the erection of the trust. The duties enjoined upon the trustees were to invest this sum and to pay or apply its income to or for the support and maintenance of the widow and daughter during their joint lives and the widowhood of the wife. In the event of the remarriage of the widow, $10,000 of the principal of the trust fund is payable to her forthwith, and " the balance. $20,000," was to be held by the trustees for the benefit of the daughter " until she attain her majority when the said principal shall be given her."

*Fifth.* In view of the fact that the individuals named as trustees were not identical with those named as executors, the two sets of fiduciaries were as legally distinct as if, for example, an independent third party or a trust company had been appointed in the trust capacity. (*Phœnix* v. *Livingston*, 101 N. Y. 451, 455; *Matter of Dority* v. *Dority*, 40 App. Div. 236, 237; *Dunning* v. *Ocean Nat. Bank*, 61 N. Y. 497, 501, 502; *Bonilla* v. *Mestre*, 34 Hun, 551, 554; *Jewett* v. *Schmidt*, 83 App. Div. 276; *Matter of Emerson*, 59 Hun, 244, 247; *Green* v. *Green*, 4 Redf. Sur. 357, 359; *Matter of Abrahams*, 136 Misc. 538, 544.) As the Appellate Division of this department said

in the *Dority Case* (*supra*, at p. 237): "The executors of the will occupied the dual positions of executors and trustees; consequently the duties which devolved upon them were distinct and separate duties — as much so as though the respective duties were devolved upon distinct and separate persons."

*Sixth.* Any real estate owned by testator at the time of his death, other than the specifically devised family residence, was equitably converted in consequence of the direction that the $30,000 trust principal was to be "realized from the sale of any and all property owned by me," and further by reason of the direction for division and distribution of the residue in six equal parts. (*Salisbury* v. *Slade*, 160 N. Y. 278, 289; *Matter of Grefe*, 140 Misc. 134, 136; *Matter of Gargiulo*, 138 id. 90, 98, and cases cited.)

*Seventh.* In the absence of any express direction in the will as to the time of exercise by the executors of the power of sale given them for the purpose of executing the testamentary intentions, the law implied that it should be accomplished within a reasonable time. No arbitrary standard can be set as to the duration of such period. As is said in *Matter of Weston* (91 N. Y. 502, at p. 511): "Where no modifying facts are shown to shorten or lengthen the reasonable time, the period of eighteen months may serve as a just standard. * * * While such period furnishes a convenient guide where no special circumstances exist, it must, after all, not be taken as a fixed or arbitrary standard. The test must remain, the diligence and prudence of prudent and intelligent men in the management of their own affairs. (*King* v. *Talbot*, 40 N. Y. 76; *Thompson* v. *Brown*, 4 Johns. Ch. 627; *McRae* v. *McRae*, 3 Bradf. 199.)"

In *Clayton* v. *Kingston* (202 App. Div. 165, 168) the court says: "The power of sale is given to the executor that the property may be sold expeditiously and economically, among other things, that the legacies may be paid. The executor may wait a reasonable time before he can be called upon to exercise the power, but that time is to be determined by the circumstances of the case and not by his caprice or conclusion as to what the testatrix intended to accomplish, nor by any arbitrary determination to postpone indefinitely its execution and payment of the legacies." (See, also, *Matter of Varet*, 181 App. Div. 446, 448; affd., 224 N. Y. 573; *Laurence* v. *Littlefield*, 215 id. 561, 581.)

*Eighth.* No discretionary powers being vested in the trustees in respect to the investment of the principal funds of the trust, it was their duty to place them only in such securities as were authorized by law for that purpose. (*Matter of Herriman*, 142 Misc. 164, 165; *Matter of Davison*, 134 id. 769, 774; affd., 230 App. Div. 868; *Matter of Robbins*, 135 Misc. 220, 223; *Matter of Harbeck*, 142 id. 57, 64.)

With these governing principles in mind, the pertinent facts will next be examined.

According to the figures submitted by the executors in their affidavits in the two transfer tax proceedings, and in the report of the appraiser upon the estate, its gross assets amounted to $113,026.13, subject to debts aggregating $14,805.73, and funeral expenses of $792.60, leaving a net estate, exclusive of administration expenses, of $97,427.80.

The main items consisted of cash of slightly less than $6,000; fifty shares of the Chicago, St. Paul, Minneapolis and Omaha Railway Company, valued at $8,000; thirteen shares of Illinois and Mississippi Telegraph Company stock; the specifically devised family residence, the equity in which was $2,500, and a certain business building located at 61 East Eleventh street, borough of Manhattan, New York city, worth $150,000, subject to a mortgage of $75,000.

The trust directed by the 2d item of the will was not erected up to the time of the judicial settlement of the accounts of the executors in 1925. Beginning shortly after testator's death and continuing up to and including the 1925 accounting, hereinafter referred to, the position adopted by the executor sons and trustees was that an aliquot part, amounting to two-fifths, of the value of the New York real estate was held by them for the purpose of the trust. In spite of the legal indefensibility of such a position (*Matter of Harbeck*, 142 Misc. 57, and cases cited), and the repeated judicial rebuffs which they received in its assertion, the singular pertinacity with which this idea was maintained forms one of the striking features of the case. Shortly after the death of the decedent the executors began making payments of $150 a month to the widow for her support and that of the infant. These were continued until April 7, 1910, when they were stopped. An application for a direction for their continuance was then made to this court by the widow, and an order was granted on June 8, 1910, whereupon the payments were resumed. They were again discontinued on February 7, 1911. In April of that year an order was obtained by her directing the executors to show cause why the payments should not be resumed, and the affidavit of Abner C. Surpless, verified May 2, 1911, in reply to this order, clearly reflects the anomalous position of the executor sons in respect to their fiduciary obligations. This affidavit reads in part: " As is stated in the affidavit of the petitioner, Catharine L. Surpless, the bulk of the estate of James Surpless consisted of a ten story loft building at 61 East 11th Street, New York, appraised at $150,000 for the Transfer Tax. On this building there is a mortgage of $75,000, thus leaving an equity of $75,000.

" The trust fund amounts to $30,000, and, at the request of the petitioner herein as conveyed to me through William W. Southworth, her attorney, it was agreed by the trustees and Catharine L. Surpless, as one of the beneficiaries of the trust, that the trust fund should be considered as invested in the said building. * * * The Court will observe that $1,800 a year amounts to 6% on the $30,000 investment, a greater return, probably than would be secured if the money had been taken out of the building and invested in those securities to which investments of trust funds are restricted. Hence Mrs. Surpless said she was perfectly satisfied to leave the $30,000 trust fund in the building and consider it invested therein, and even asked me to sign a statement to that effect, which I did not do, although as I have stated above, I agreed as trustee, in which agreement Joseph D. Surpless, cotrustee, concurred, that the trust fund should be considered invested in the building."

By its order made June 7, 1911, the court overruled this contention of the trustees, Joseph and Abner, that the trust fund should be considered in the building and that consequently the widow and infant were entitled only to two-fifths of the income which it produced.

From this order an appeal was taken by Abner to the Appellate Division and the order was unanimously affirmed on November 1, 1911. He thereupon took an appeal to the Court of Appeals which, however, was not perfected.

Over date of February 29, 1912, Abner verified an affidavit in an application to this court for modification of the order for payment of $150 a month to the widow. This affidavit read in part as follows: " VII. That the trust fund aforesaid, provided by the said will, amounts to $30,000, and, at the request of the petitioner herein as conveyed to deponent through William W. Southworth, her attorney, it was agreed by the trustees and Catharine L. Surpless, as one of the beneficiaries of the trust, that the trust fund should be considered as invested in the said building.

" That the $1,800 a year payment to Catharine L. Surpless, represented two-fifths of the net income from the building during the year following the testator's death and up to and including the first day of February, 1911. As the estate's equity is $75,000, $30,000, the amount of the trust fund, is two-fifths of the equity, and accordingly, as a Trustee, I felt that two-fifths of the net income was a proper and legal proportion of the income to pay to Catharine L. Surpless * * *."

The motion for modification of the allowance was denied by order of this court on March 27, 1912.

In spite of these judicial rebuffs, a similar application was made

and denied on March 23, 1923, and finally the same position was advanced in the answer of Abner C. Surpless to the objections of the widow to the account of the executors accompanying their petition for a judicial settlement, filed in this court on May 5, 1925.

The accounting of 1925 has an all-important bearing òn the questions here in controversy and will, therefore, be considered at some length. It was initiated on the petition of Joseph and Abner only, and prayed the judicial settlement of the accounts of the executors from February 17, 1915, the date covered by a previous judicial settlement, up to April 20, 1925.

The account made no distinction between receipts on account of principal and income, all being lumped together in Schedule A thereof. An analysis of its debit items, aggregating $131,796.69, shows that of this sum $3,230.19 was the balance found remaining in the hands of the executors on the previous accounting, $1,204.80 was the proceeds of sale of forty shares of the railroad stock owned by the decedent, $140 was a dividend received on this stock, $4,639.19 was the sale price of certain unimproved real property which had belonged to the decedent, and the remainder, amounting to $117,888.11, represented receipts from the continued holding and management of the loft building, owned by decedent at 61 East Eleventh street, New York city.

The disbursements shown in Schedules C and E, which were the only ones containing such items, may be roughly summarized as follows:

| | | |
|---|---:|---:|
| Payments in reduction of the mortgage on the Eleventh street property | $13,000 | 00 |
| Commissions paid to executors | 879 | 20 |
| Expenses of action for admeasurement of dower | 3,489 | 00 |
| Costs, fees, etc., in Surrogate's Court | 4,257 | 50 |
| Upkeep of cemetery plot | 12 | 00 |
| Petty disbursements of executors | 6 | 34 |
| Rental of safe deposit box | 200 | 00 |
| Expenses of maintenance of real property, almost entirely in connection with the continued operation of the Eleventh street loft building | 85,514 | 41 |
| Payments of income to trust beneficiary and trustee's commissions deducted from same | 12,350 | 00 |
| Payments to general legatees | 2,000 | 00 |
| Making an aggregate of claimed deductions | $121,708 | 45 |

And leaving an apparent balance in the hands of the executors of $10,088.24.

It may be noted in passing that the 1915 account had been treated in the same manner. The only principal items listed in the transfer tax proceeding which were then accounted for were the cash items stated to be in the hands of Abner and on deposit in the Washington Trust Company, the Throop avenue mortgage, ten shares of the railroad stock and the sums received in settlement of the decedent's interest in Surpless, Dunn & Co.

The result of the 1925 account, taken in conjunction with that of 1915, was to demonstrate that although approximately sixteen years had elapsed since decedent's death, the executors had never sold the unimproved Floral Park lots, the telegraph stock nor the loft building on Eleventh street; that without any express authorization in the will they had continued decedent's business of managing the latter; and, in violation of the express direction of the will, they had failed to erect the preferred $30,000 trust for the maintenance of the widow and infant daughter.

Objections on the last score were promptly filed by the widow and by the special guardian for the infant. The former also answered that the executors were in arrears to the extent of $8,469.36 in the payments which the court had repeatedly ordered to be made to her as hereinbefore noted, and expressly invited the attention of the court to the large sums, aggregating $8,194.59, paid out in legal expenses, the $13,000 paid in reduction of the Eleventh street mortgage and the sums paid deferred legatees.

Abner C. Surpless filed a reply, in which he again adopted the position which had so frequently received judicial disapproval, that the funds of the trust were invested in a two-fifths participation in the loft building, and the case was brought on for hearing on these issues.

On June 27, 1925, the court filed its opinion and determination on these issues, which read as follows: " Objection is made by Catharine L. Surpless that the accountants have not made payments of income to her as heretofore directed by this court, and that there is now due her an unpaid balance of income in the sum of $8,469.36.

" Objection to the same effect is made by the special guardian; who also makes the further objection that the trust created by the will has not been set up, although sixteen years have elapsed since the testator's death.

" The executors have permitted the entire estate to remain invested in a loft building in Manhattan, applying income to pay carrying charges and to reduce mortgages to the benefit of the remaindermen, among whom are included themselves.

" The amounts due the beneficiaries of the trust fund, under the orders heretofore made, which is found to be the sum of $8,469.36, must be paid, and the trust must be set up without further delay. The real estate should be sold, if necessary, to accomplish this purpose."

This was followed, on July 30, 1925, by the formal decision of the court, which read as follows:

" 1. That the trust created by the will of the testator in the sum of thirty thousand ($30,000.00) dollars has not been set up, although sixteen years have elapsed since the testator's death; that the said trust must be set up without further delay; and that the real estate be sold, if necessary, to accomplish this purpose.

" 2. That there is a balance of income due Catharine L. Surpless for the support and maintenance of herself as widow and of the infant daughter, Eleanor L. Surpless, in the sum of Eight thousand four hundred sixty-nine and 36/100 ($8,469.36) dollars under the orders heretofore made by this Court and that the executors herein must pay the said sum."

This decision was accompanied by a decree which made the following directions: " Ordered, adjudged and decreed and the said executors, Joseph D. Surpless and Abner C. Surpless, and the executrix, Catharine L. Surpless, of the last will and testament of James Surpless, testator, deceased, be and they hereby are ordered and directed to pay to the said Catharine L. Surpless, for the support and maintenance of said Catharine L. Surpless and said Eleanor L. Surpless, the infant daughter of James Surpless, testator, deceased, the sum of eight thousand four hundred sixty-nine and 36/100 ($8,469.36) dollars, being the amount found due them as an unpaid balance of income heretofore directed to be paid to them by this Court; and it is further Ordered, adjudged and decreed and the said Joseph D. Surpless, Abner C. Surpless and Catharine L. Surpless, the executors under the last will and testament of James Surpless, testator, deceased, are hereby ordered and directed to invest the sum of thirty thousand ($30,000.00) dollars in trust as directed and provided in the will of the said James Surpless, testator, deceased, for the benefit of the said Catharine L. Surpless and the said Eleanor L. Surpless and that said executors sell any and all real estate belonging to the Estate of said James Surpless, testator, deceased, or so much thereof as shall be necessary to set up and. establish this trust fund and to accomplish the purposes and directions of the said last will and testament of James Surpless, testator, deceased, in respect thereto; and it is further  *  *  *."

It then provided for the payment of an allowance to the special guardian for the infant daughter, allowances of commissions and

costs, and concluded: " Ordered, adjudged and decreed that upon making the payments above described to be made, and in compliance with all matters in this decree mentioned, the said executors be, and they hereby are discharged as such executors of and from all liability therein as to the matters and things embraced in said account."

No appeal was taken from this decree, wherefore it is now the law of the case, and cannot be modified by this or any other court except upon a demonstration of fraud, mistake, lack of jurisdiction or newly-discovered evidence (*Matter of Dunne*, 138 Misc. 840, 842, 844, and cases cited), none of which conditions are here present.

The next pertinent question is, therefore, the effect of this decree. Obviously it is a direct and final judgment in favor of Catharine L. Surpless against the executors for the sum of $8,469.36. The succeeding paragraph, while somewhat ineptly worded, is, when read in conjunction with items " second " and " third " of the will which it incorporates by reference, an equally clear judgment for $30,000 against the executors in favor of the trustees. The language is that the executors " are ordered and directed to invest the sum of thirty thousand ($30,000.00) dollars in trust *as directed and provided in the will* of said James Surpless, deceased, for the benefit of the said Catharine L. Surpless and the said Eleanor L. Surpless and that said executors sell any and all real estate, belonging to the Estate of said James Surpless, testator, deceased, or so much thereof as shall be necessary *to set up and establish this trust fund and to accomplish the purposes and directions of the said last will and testament* of James Surpless, testator, deceased, in respect thereto." (Italics not in original.)

The use of the word " invest " in this direction is somewhat ambiguous when standing alone and employed in its most common meaning. A secondary connotation of the word given in the Standard Dictionary (1930 ed.) is, however, " to vest in some person." The same authority defines " vest " as " to confer ownership of, as property, upon a person." It is apparent that if this allowed meaning of the word be employed, the entire direction is clear and consistent, and directs the executors " to confer ownership of the sum of $30,000 in trust as directed and provided in the will." The direction of the will is that such ownership in trust be conferred upon and vested in the two sons, Abner and Joseph, as trustees. As a result the conclusion is inescapable that the only reasonable construction of this paragraph of the decree is a direction for a payment of $30,000 by the executors to the trustees " to set up and establish this trust fund and to accomplish the purposes and directions of the said last will and testament." As

so construed, it is clear that the judgment of $30,000 in favor of the trustees is a final docketable judgment equally with that of the $8,469.36 in favor of the widow in the preceding paragraph. Since, as noted, the trustees, in legal contemplation, are separate and distinct individuals from the executors, it was their right and duty to enforce the recovery thus granted them in the determination on the merits of the issues raised by the objections of the culpability of the executors in failing to realize on the assets of the deceased for sixteen years, for diverting large sums from the primary beneficiaries to the enhancement of the value of the remainder interests in which they, as individuals, were participants, for the payment of deferred legacies in preference to those which were entitled to prior payment, and for the disbursement of unreasonably large sums for attorney fees and expenses.

This was a final judgment on the merits, and its subject-matter is now *res adjudicata* as to the liability of the executors in that connection. (*Rudd* v. *Cornell*, 171 N. Y. 114; *Cline* v. *Sherman*, 144 id. 601, 606; *Skillin* v. *Central Trust Co.*, 80 App. Div. 206, 209; *Fulton Co. Gas & Elec. Co.* v. *Hudson River Tel. Co.*, 200 N. Y. 287, 296, 297.)

The facts which have been made to appear in the present proceeding, that the executors have paid Mrs. Surpless only $4,500 on account of her judgment of $8,469.36, and that they continued to hold the Manhattan property until February 22, 1931, when it was sold under foreclosure of the mortgage thereon, realizing a sum less than the amount of the incumbrance, are not material in respect to anything except the disposition of the balance shown to be in the hands of the executors on the present accounting. The court in 1925 accorded the objecting parties the full relief which they prayed, and the circumstance that they have not seen fit to enforce their adjudicated rights is a matter with which they alone are concerned.

These conclusions render the consideration of the issues raised upon the present accounting by the exceptions of the widow and the answer of the daughter capable of ready determination. The former objects solely by reason of her failure to receive the $10,000 portion of the trust corpus payable to her according to the direction of the will on her remarriage, and the fact that $3,969.36 of her $8,469.36 judgment against the executors remains unpaid. The answer of the daughter complains solely by reason of the admitted failure of the executors to erect the trust as directed in the 1925 decree. A surcharge of the executors in consequence of their failure of compliance with the directions of that decree is the relief sought. Obviously such relief cannot be granted. Were this court to enter

a second decree surcharging the executors with the sums for which it rendered a judgment against them in 1925, it would be granting a double recovery in respect to the same matters. This obviously cannot be done, as it would place it within the power of the injured parties to obtain a double recovery for the same improper acts of the accountants. *Deraismes* v. *Deraismes* (72 N. Y. 154) is directly in point in this connection. The objecting parties already have an enforcible, unimpeachable determination in their favor in respect to all of the issues presently raised. Their remedy is to proceed with the enforcement of their adjudicated rights.

It is to be noted in connection with the present accounting that it does not purport in any respect to cover the acts or derelictions of the two trustees. These are not in issue and may be brought on for determination either in an application for their removal or in some other appropriate proceeding. Also, the daughter makes no complaint against the executors in her capacity as a residuary legatee, wherefore, the inordinate delay of the executors in failing to sell the realty for twenty-two years, as a result of which eighty-nine and seventy-three one-hundredths per cent of the estate intrusted to these fiduciaries was dissipated, is not a presently pertinent consideration. For these reasons no substantial part of the testimony of the accountants on the present hearing possessed any possible relevancy or materiality on the issues presented. The impropriety of the retention of the real property up to 1925 was determined in the previous accounting so far as it concerned the trust and its beneficiaries. The issue has never been presented by any party respecting any other relationship.

The only conceivable materiality of the admitted facts asserted in the exceptions of the widow and the answer of the daughter, relates to the disposition of the debit balance shown by the account. In so far as this is not required for the payment of the expenses of this proceeding, it must be turned over to the trustees in partial solution of the sums due the latter from the executors for the erection of the trust as determined in the 1925 decree.

In view of the deliberate disregard by the executors of the formal decree of this court, they are denied commissions on the sums for which they account herein and they are also denied costs of this proceeding.

Their account, as presented, may be judicially settled, but the decree to be entered thereon shall make it entirely apparent that such settlement in no wise affects the transactions or liability of the trustees or the continuing liability of the executors under the decree of 1925.

Proceed accordingly.