In the Matter of the Estate of STUYVESANT WAINWRIGHT, Deceased.

Surrogate's Court, Westchester County, November 23, 1935.

*Barry, Wainwright, Thacher & Symmers,* for the petitioners.

*Beekman & Bogue [Matthew M. Campbell* of counsel], for Stuyvesant Wainwright, Jr., and others.

*Friend L. Tuttle,* for Hugo Crabs, objectant.

*Roger Sherman,* for Sarah Wainwright, individually.

*Arthur R. Wilcox,* special guardian.

SLATER, S. In this accounting proceeding numerous questions relating to the care of the estate have been presented to the court.

The will was executed on March 12, 1928, prior to the financial depression. The decedent died November 3, 1930. The will disposed of the testator's own property as well as " all the property of which I may have the right or power to dispose at the time of my death." Under the will of his mother, Margaret S. Wainwright, the decedent was the beneficiary of a trust with a power of appointment. Pursuant to the terms of his will, he executed the appointment.

The first paragraph of the will authorizes the payment of debts, funeral and testamentary expenses. The second paragraph makes gifts of jewelry and household furniture. The third paragraph gives to his secretary $15,000. None of these gifts are directed to be paid out of the property over which he had the power of appointment. The reverse of this was true in *Matter of Wadsworth* (157 Misc. 125), where the testator made express direction for the payment of certain debts out of the appointed estate and not from his individual estate.

The court will hold that the gift of $15,000 to the secretary under the third paragraph of the will is not a charge upon nor to be paid from the appointed trust. The legacy is payable prior to the residuary gift of the testator's own estate, subject to the prior payment of debts, estate taxes and funeral and administration expenses, but payment of the legacy may be deferred to meet the exigencies of the estate.

Upon this accounting the question has been raised whether the estate appointed by authority of the Margaret S. Wainwright will passes through the hands of these executors. This question has been decided by this court in a proceeding entitled: " In the Matter

of the Judicial Settlement of the Account of Proceedings of * * * Trustees * * * of Margaret S. Wainwright," and in which a decree was entered dated January 11, 1934. The question, if not considered *res adjudicata,* will be considered by the court as *stare decisis.* The appointed estate passes directly from the trustees under the Margaret S. Wainwright will to the trustees under the decedent's will.

The corpus of the appointed trust, *i. e.,* the Margaret S. Wainwright fund, is entirely a separate estate. It becomes lodged in the hands of the trustees of the decedent's will because of the exercise of his power of appointment. It has nothing whatsoever to do with his individual estate. It simply flows in the same direction as the residue of his own estate. There is no unity between the two funds either as to principal or income. Income, if any, from the appointed trust fund would be free from any charge or debt which might be payable by either the principal or income of decedent's individual estate.

*Question one.* Certain parcels of real estate have been sold by the executors and the question is now presented whether the funeral and administration expenses, estate taxes, and debts, to the extent to which they are unpaid, may be paid from the proceeds of the sale of the realty.

This estate is like many others. It is difficult to handle in these times of financial stress because of the fact that it largely consists of real property, improved and unimproved, as well as personal property, which cannot be readily sold. The codifiers of the Surrogate's Court Act in 1914, chapter 443, Laws of 1914, provided for the payment of expenses incurred by representatives by stating that such expenses may be paid from the " funds or *estate* in his hands." This is now section 222 of the Surrogate's Court Act. The word " *estate* " is all inclusive. (*Matter of Frey,* 154 Misc. 421, 425.) The revisers' note read: " In theory now many payments of such character must be made from personal funds, although in practice, they are not. It is better to authorize the common practice." (Senate Documents 1914, No. 23, p. 220.) So, we will follow the common practice.

In the revision by the Decedent Estate Commission in 1929 the devolution of title to real and personal property was changed. The new law applies to the instant estate. There now exists a single and uniform system of descent and distribution of property. Section 81 of the Decedent Estate Law says: " All distinctions between the persons who take as heirs at law or next of kin are abolished and the descent of real property and the distribution of personal property shall be governed by this article." This

reform has removed the distinction between real property and personal property considered as assets of an estate. Both kinds of property are merged and flow through a single channel. The law establishes one rule of succession and one class of distributees to take both such properties.

The evident intent of the testator was to commingle his real and personal property because he referred to "all the rest and residue of my property, both real and personal, or the proceeds of sale thereof, remaining after satisfying the preceding provisions of this my Will, or such of them as shall become operative."

I hold that funeral expenses, administration expenses, including the services of counsel for the executors, estate taxes and debts may be paid from the fund resulting from the sale of the real property. In other words, the executors may pay such charges from personal property or the proceeds of the sale of real property.

*Question two.* Many of the queries here arising will be answered upon decision of the following question: Does the decedent's will, by the terms of the power of sale, create an equitable conversion of the real estate of which he died seized? The clause of the will containing the power of sale reads as follows:

"*Fifthly.* I nominate, constitute and appoint my said wife, Sarah Wainwright, and Bank of New York and Trust Company, a corporation organized under the laws of the State of New York, the Executors of this my Will, and I authorize and empower my said Executors, or such of them as shall qualify and the survivor or successor of them, to sell all or any part of the real property of which I may be seized in severalty, or in common with others, at the time of my death, either at public auction or by private contracts, and to execute good and valid deeds therefor to the purchasers thereof."

The instant case is not unlike *Lawrence* v. *Littlefield* (215 N. Y. 561). There the legal question presented was whether, under a will creating a trust of unproductive real estate with income payable to the life beneficiary and remainder to others, with imperative power of sale resulting in an equitable conversion of the real estate into personalty at the death of the testator, the actual sale and conversion occurring only after considerable delay, the testator will be held to have intended that the proceeds, thus and when realized, should be apportioned between the income payable, from the time of his death, to the life beneficiary and the principal belonging to the remaindermen; *or* whether the testator is to be assumed to have intended that the proceeds thus realized should be treated only as principal, with income payable thereon to the life beneficiary *only* from the date of the actual conversion. It was held

that the proceeds arising from the sale of the real estate should be in part apportioned to income for the period intervening the testatrix's death and the sale, The court stated the ordinary rule to be that, where a conversion of property is required to form the trust fund, income will not commence until one year after death, unless conversion actually has been accomplished sooner; that the will worked and effected an equitable conversion at the time of testatrix's death and the court applied the doctrine of a conversion at such time.

The instant case is not one where the testator directed the executors to sell *only if and when they think it wise.* In such a case, there is a clear declaration that what the testator has in mind is to benefit the principal of his estate. It is that which he considers, not the needs of the life tenant. In *Furniss* v. *Cruikshank* (230 N. Y. 495) the court held that the beneficiary should be compensated for the income she would have received if the conversion had taken place within a reasonable time. Ordinarily that time is assumed to be one year after the death of the testator. The court further said that, if the testator intended to effect an equitable conversion, the taxes should be paid from principal. (Citing *Spencer* v. *Spencer*, 219 N. Y. 459.)

The next case in the development of the equitable conversion doctrine now under consideration is *Matter of Jackson* (258 N. Y. 281), where the court said that the general rule is laid down in *Matter of Albertson* (113 N. Y. 434), where the purpose of the testator is to give the beneficiary the net income and to preserve the corpus intact until the termination of the trust. The reasonableness of the rule, as applied to productive property, permits no question. The *exception* to the rule relates to unproductive land held in trust as set out in *Lawrence* v. *Littlefield* (*supra*); *Spencer* v. *Spencer* (*supra*); *Furniss* v. *Cruikshank* (*supra*). These cases rest upon the assumption that the testator did not intend to impoverish or hamper the life tenant with carrying charges for the benefit of the residuary estate. In the *Jackson* case the power of sale was held to indicate an intention to constitute an imperative sale and an equitable conversion of the real estate into personalty at his death. The court again made a distinction between a case where there is no imperative power of sale and where the testator directs the trustees to sell *only in their discretion.*

*Matter of Satterwhite* (262 N. Y. 339) deals with a similar question and holds for an equitable conversion upon the end of the three-year period named in the will. (See *Matter of Boyle*, 140 Misc. 523.)

*Matter of Schuster* (123 Misc. 314), to be read with *Matter of Schuster* (232 App. Div. 841) and *Matter of Schuster* (150 Misc. 444), was a case where the will contained a direction that the life tenant should pay and bear all the necessary charges for the maintenance and repairs, including taxes, assessments, etc. The terms of the will are very much like those in the case at bar. In the case at bar the residuary estate is given in trust for the trustees to receive the rents and after paying therefrom all taxes, etc., to pay the *net* rents to the widow for her life. It was held in the *Schuster* case that a reasonable time to have sold the property was one year after the date of letters; that " the language of the will which calls upon the life tenant to bear and discharge out of income all necessary charges for maintenance of real estate * * * *applies only to the period of one year from letters testamentary.* At such time the testator intended this estate to be in personalty, free from payment of taxes and such real estate charges." (See 150 Misc. 448.)

As a result of the equitable conversion, the carrying charges of the realty (of which testator died seized), after one year from the date of letters testamentary, are not a proper charge against the life estate, but are properly chargeable to principal, and such charges, including any advances on account thereof paid by the executors, may be paid either from personal property or the proceeds of the sale of realty.

Up to the present time, we have been dealing with the legal aspect of the case. In view of the times, there is another aspect to be considered which is bothering the executors.

During the period covered by the account, income has amounted to approximately $30,000, and the expenses paid therefrom have amounted to about $28,000, leaving a small amount of income to pass to the widow. This entire $28,000 includes all carrying charges on the realty and has been charged in the account to income. As I have indicated, these charges must be made as against principal. For the protection of the life beneficiary and the remainder people, taxes must be paid and the executors may have need to temporarily use income. Later on, upon the sale of the property and upon a further accounting, there must be an allocation and payment of proper amounts of income to the life beneficiary.

To summarize: The testator created an equitable conversion of his property at his death for the benefit of his widow. The provisions for the trustees to pay out of income, taxes and such other expenses, in view of the equitable conversion, refer only to the duration of one year after the issuance of letters testamentary. A further indication of the testator's intention is the fact that the

provisions of the will are to be in lieu of dower. (*Matter of Lichtenberg*, 114 Misc. 89, 90.)

Throughout the years the courts have made advances in the application of equitable principles and have refrained from burdening the primary beneficiaries with the cost of carrying unproductive realty for the benefit of the ultimate remaindermen. (*Matter of Wardman*, 154 Misc. 255, 257; 40 Yale Law Journal, 275.)

The needs of the situation in this estate cause much embarrassment to the executors. For instance, take the sale of unproductive real estate already made. That fund has been used in part to pay taxes and some administration expenses. While, as a matter of law, the life beneficiary is entitled to the income on the amount of the sale of real property from one year after the issuance of letters testamentary, the need of the money may compel its temporary use to protect the remaining real property.

The personal property in the hands of the executors consists of non-trustee securities. The will fails to give authority to hold them. While a long time has elapsed since the testator's death, the executors are entitled to a further reasonable time, in the light of the continued depressed market conditions, to bring about a sale of such securities and reinvestment of the proceeds in legal securities. What is a reasonable time in the light of the present conditions is difficult to answer. I would say at least another year, when application may be renewed to the court upon this question. (See *Matter of Watson*, 145 Misc. 425.) The foregoing is also applicable to personal property in the appointed trust.

The court declines to grant the application regarding the mortgaging of the property under section 250-a of the Surrogate's Court Act at this time. No one is finding fault with the conduct of the executors because of the lack of ability to find buyers in this market, if there be such thing as a market. In fact, the executors could very properly be criticized for forcing the sale of the property at improvident prices.

Any question submitted or raised in the briefs of counsel not answered in this opinion, the court declines to give advice upon.

Any of the parties hereto, upon notice to all attorneys and the special guardian appearing, may apply at the foot of the decree in this accounting proceeding at any time for further direction regarding the affairs of this estate, including the power of the trustees of the appointed trust to join in the sale of any real property belonging to said trust.

Submit decree in accordance herewith.